UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:06-CR-130 |
| | ) | (Varlan / Shirley) |
| RICHARD DARYL BAILEY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

All pre-trial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the district court as may be appropriate. This matter is before the Court upon the following pre-trial motions filed by defendant Richard Bailey, all non-dispositive pending motions are addressed by this Court's separately filed Memorandum and Order:

1. Motion to Suppress [Doc. 39];

2. Motion for Evidentiary Hearing Pursuant to Franks v. Delaware [Doc. 40];

3. Supplemental Motion to Suppress and Supplemental Motion for Evidentiary Hearing Pursuant to Franks v. Delaware and Incorporated Memorandum of Law [Doc. 66];

4. Motion for Reconsideration of Denial of Franks Hearing [Doc. 83];

An evidentiary hearing encompassing motions 1 through 3 listed above, along with the government's responses, was commenced on February 1, 2006, and continued to February 26, 2007. On the February 1, 2007, the government was represented by Assistant United States Attorneys Jeff Theodore and William Mackie; on February 26, 2007, Assistant United states

1

Attorney Tracy Stone assumed the case for the government. Attorneys James A.H. Bell and Richard L. Holcomb represented Richard Daryl Bailey, who was present on both dates. As pre-trial motions were supplemented during the adjournment of proceedings, the parties did not request leave to file post-hearing briefs.[1] The Court took these matters under advisement February 27, 2007.

## A. FACTS

On February 1, 2007, the Court heard testimony from Kay Stanifer, called by attorney Bell, who has served as the Property Assessor for Claiborne County, Tennessee since 1994. Ms Stanifer brought with her a number of maps maintained in the course of her duties as Property Assessor. Ms Stanifer testified to the evidentiary foundation for "Map 19," which showed the Richard Daryl Bailey property and was received into evidence without objection. Ms Stanifer also confirmed the accuracy of an enlargement of Map 19, received as Exhibit 1A. Ms Stanifer identified, and outlined in colored markers, five parcels of land on Map 19 which the records showed belong to Richard Daryl Bailey. Ms Stanifer then testified as to a second map, Map 6, which was also received as an exhibit. Her testimony indicated that Parcel 16.01 was also known as 185 Cattle Drive and was the location of the E-911 address for 185 Cattle Drive. This parcel was marked in red on Exhibit 1A. It appeared to the Court that what is shown as a driveway to defendant Bailey's residence is the referenced 185 Cattle Drive. Ms Stanifer marked this in green on Exhibit 1A. She confirmed that this driveway road passed through Parcel 23.03 as well.

On cross-examination AUSA Theodore asked Ms Stanifer to identify a road known as "Cattle Drive" on Map 19. Ms Stanifer testified that she is unfamiliar with Cattle Drive and

---

[1] Although the defendant did file a Motion to Reconsider of Denial of <u>Franks</u> Hearing [Doc. 83] on March 2, 2007, to which the government responded March 16, 2007 [Doc. 90].

could not indicate it on the map. AUSA Theodore then proffered the search warrant at issue, along with its attachment A, attachment B, the application and affidavit along with 15 photographs on 12 pages as a collective exhibit. The Court received these materials into evidence without objection. Ms Stanifer confirmed that, according to the records maintained by her office, Cattle Drive lies entirely on property owned by defendant Bailey, turning off from Hopewell Road to the north. She also reviewed a photograph of the area and state it looked like the residence (Mr. Bailey's) was at 185 Cattle Drive. Ms Stanifer also reviewed the driving directions provided in the search warrant and stated that, based on those directions, she believed she could find 185 Cattle Drive.

The second witness received by the Court was Ms Kim Reese. Ms Reese testified that she has served as the Claiborne County Register of Deeds for the past 24 years. Ms Reese authenticated two deeds for property owned by Mr. Bailey, which were received as Exhibits 3 and 4. Ms Reese confirmed that the property indicated on Exhibit 4 was previously owned by a Ronnie Parks, having been transferred to the defendant in July 2003, according to her records. After this testimony was received, Ms Stanifer and Ms Reese were excused by the Court. The Court then took up the matter of the suppression hearing, first hearing argument from defense counsel on Mr. Bailey's Motion for Evidentiary Hearing Pursuant to Franks v. Delaware [Doc. 40].

Given the development of the argument, and the apparent change in theories and need for new briefing, the Court adjourned further proceedings to February 20, 2007, at 9:30 a.m. This date was subsequently continued on motion of the government after substitution of counsel.

On February 26, 2007, the hearing resumed. The Court first heard Mr. Bailey's Motion to Strike [Doc.76], accompanied by a Motion for Leave to File, asking that the Court permit him

to withdraw one of his arguments as to the credibility of Richard Bailey, Jr.  The Court granted the Motion to Strike, [Doc. 76].  The Court then heard non-evidentiary argument on the merits of the Motion for Evidentiary Hearing Pursuant to <u>Franks v. Delaware</u> [Doc.  40]. Having concluded that a <u>Franks</u> hearing was not warranted, as will be discussed further herein, the Court took up the suppression hearing.

At start of the suppression hearing, attorney Holcomb outlined arguments to be made on behalf of Mr. Bailey.  Attorney Holcomb handled all argument on behalf of Mr. Bailey at the suppression hearing; AUSA Stone argued on behalf of the government.

The first witness heard was Sergeant Chadwell of the Claiborne County Sheriff's Office. Sgt. Chadwell identified Mr. Bailey, having met him in response to an E-911 call on the night of August 31, 2006, and on another, previous encounter.  Sgt. Chadwell testified that he and Deputy Josh Russell responded to a call for assistance at 185 Cattle Drive.  The officers drove past the road and the defendant "spotlighted" them, flagging them down.  Sgt. Chadwell identified photographs of a metal livestock gate at which he and Deputy Russell stood talking to Mr. Bailey after stepping from their patrol vehicle and circled the location on Exhibit 8.  Sgt. Chadwell testified that Mr. Bailey was "above the gate" from where the deputies stood and that Mr. Bailey's house was also "above the gate" on the far side from the officers.  Sgt. Chadwell testified about the route to take driving to defendant Bailey's residence from Knoxville.  Sgt. Chadwell testified that from Knoxville, a driver would take highway 33 north to Cedar Fork Road, which turns into Hopewell Road as it approached the Hopewell Community.  Sgt. Chadwell says he believes Cedar Fork Road becomes Hopewell Road near where it passes by Cattle Drive.  Sgt. Chadwell testified that until this case arose, he was unaware that highway 33 and Cedar Fork Road do not intersect, as the highway is known locally as "33" all the way past

4

the city of Tazewell. Sgt. Chadwell testified that he is "very familiar" with the area in question and that, "this was the first time I'd been to the defendant's residence and I didn't have any trouble finding it." On cross-examination, Sgt. Chadwell testified that it is actually, he learned later, Highway 25 which continues north through Tazewell and on to Middlesboro, Kentucky. Highway 33, he testified, actually turns to the right in the city of Tazewell and joins Highway 25 proceeding in an easterly direction.

Resuming his description of the events of August 31, 2006, Sgt. Chadwell testified that while he and Deputy Russell stood at the gate, Mr. Bailey stood on his side of the gate near a Chevrolet pick-up truck. Sgt. Chadwell testified that he saw the defendant had a long gun in his hand. Sgt. Chadwell said Deputy Russell reported that Mr. Bailey got the rifle from the vehicle. Sgt. Chadwell testified that Deputy Russell knows more about guns, and that Sgt. Chadwell could not identify the gun further on his own knowledge, other than to add that he saw a scope on it and that it appeared to be a "bolt action" weapon. He did testify that the defendant described the rifle as a .220 Swift. Sgt. Chadwell marked on Exhibit 1A the location where this interaction took place, indicating that the defendant's truck was parked about 25 to 30 yards from the gate and Mr. Bailey was 6 to 8 feet from the gate. After his testimony, Sgt. Chadwell was excused by the Court.

The next witness to testify was Licensed Private Investigator Shayne Cooper, retained on behalf of defendant Bailey. Investigator Cooper testified that he followed the directions exactly as provided in the search warrant. A digital video exhibit was introduced during Investigator Cooper's testimony showing the drive, along with photographs of the intersection in question in Tazewell. Exhibit 19 and Exhibit 18, respectively. Investigator Cooper testified that had he

continued on the route indicated, and turned as noted, he would have driven off the roadway and into a ditch.

The Court finds all witnesses who offered testimony at the hearings were credible and provided helpful information to the Court. The remainder of information received by the Court was presented in the form of argument of counsel, outlined herein.

## B.  ISSUES PRESENTED FOR REVIEW

Defendant Bailey has moved to suppress all evidence "obtained as the product of a search warrant executed on September 28, 2006, at 185 Cattle Drive and Parcels 009.00 and 010.01 Map 019, Morgan Lane, Harrogate, Claiborne County, Tennessee…"  Motion to Suppress, [Doc.39] at ¶ 1.  Mr. Bailey challenges the validity of the search warrant itself on a number of grounds addressed below.

As a threshold matter to the Court's review of the search warrant, Mr. Bailey has moved this Court to conduct an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) [Doc. 40].  In support of his request, Mr. Bailey asserts that the affiant made material misrepresentations and / or made material omissions in the facts presented to the issuing magistrate, either intentionally or with reckless disregard for the truth.  Because the Franks issues necessarily determine the scope of this Court's review of the affidavit and search warrant, it was addressed as a threshold matter at the hearing.

**1.  Whether Defendant Richard Bailey is Entitled to an Evidentiary Hearing as Provided in Franks v. Delaware, 438 U.S. 154 (1978).**

In determining the sufficiency of any search warrant affidavit, the Court may consider "the evidence that the issuing magistrate had before him only to ensure that he had a substantial basis . . . for concluding that probable cause existed."  United States v. Jones, 159 F.3d 969, 973

(6th Cir. 1998) (quoting Illinois v. Gates, 426 U.S. at 238-39). In a review of that evidence, the Court is "concerned only with the statements of fact contained in the affidavit." United States v. Hatcher, 473 F.2d 321, 323 (6th Cir. 1973); accord United States v. Frazier, 423 F.3d 526, 531 (6th Cir. 2005) ("our review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit"). Accordingly, a defendant ordinarily may not "go behind" the warrant to contest its validity; a challenge is limited to the four corners of the warrant and its accompanying affidavit. If, however, a defendant can make a preliminary showing that the affidavit contains a misrepresentation of material fact, or any intentional misrepresentation, or a material omission, then an attack on the veracity of the allegations contained in the affidavit may be permitted under Franks v. Delaware, 438 U.S. 154 (1978).

The controversy over the veracity of the search warrant affidavit in this case involves both alleged false statements and material omissions alleged to have been made by Agent Moore in the facts he presented to Magistrate Judge Guyton. At the hearing of this motion, attorney Holcomb asserted the following bases for defendant's request for a Franks hearing:

### A. *False Statements*

(1) Richard Bailey was a convicted felon.

Agent David Moore made this statement in his affidavit in support of the search warrant:

> In April 1987, Richard Darryl Bailey was convicted of Possession of a Controlled Substance in the Circuit Court of Claiborne County, Tennessee. This conviction is a felony conviction and as such prohibits Bailey from possessing firearms and ammunition as proscribed by 18 U.S.C. § 922(g)(1).

> Exhibit 2 at ¶ 2.

Mr. Bailey disputes the contention that he is a convicted felon and asserts that the affiant, at the very least, should have informed Judge Guyton that Mr. Bailey's status as a convicted felon could be in question. From argument of both Mr. Bailey and the United States, it appears the underlying facts are, with a single noted exception, not in dispute:

A highly irregular series of events began on April 28, 1987, when Mr. Bailey was convicted of Possession of a Schedule III Controlled Substance a felony violation of Tennessee law. Despite the fact that at the suppression hearing on February 26, 2007, counsel for Mr. Bailey declined to admit or deny that he was, in fact, convicted of a felony on that date, the Court finds that the overwhelming evidence indicates he was convicted of a felony on April 28, 1987.. This conviction was itself an unremarkable, valid judgment of the Criminal Court for Claiborne County, Tennessee, signed by the late Judge Lee Asbury, at that time the presiding criminal judge for the jurisdiction. Judge Asbury's judgment of conviction is before this Court as Exhibit 7. This Court finds that Richard Bailey was convicted of a drug felony on April 28, 1987, as set forth by Exhibit 7. That case was identified by the Claiborne County Criminal Court as docket number 9768. Eleven years later, on August 24, 1998, it appears that Judge Asbury signed an Order that purported to expunge six case files with different docket numbers, including 9768. [Doc. 66-10]. All the case files listed on the Order were apparently physically expunged on or about August 27, 1998. The 1998 Order also bears the signature of an unidentified assistant district attorney general, indicating the State of Tennessee approved entry of the Order. Approximately five years after that Order, it evidently came to the attention of the District Attorney General's Office that the 1998 Order of expungement included a felony conviction (docket number 9768) which cannot be expunged under Tenn. Code Ann. § 40-32-101. Thereafter, on April 14, 2004, a deputy district attorney general filed a "Motion to Re-

Establish Record of Conviction Erroneously Expunged," in the same court. On June 14, 2004, the judge of the Criminal Court for Claiborne County signed another Order, by interchange, directing "that the criminal file in this case be reconstituted by designating the exhibits filed by the State in its motion as duplicates of the original file, which shall be available for public inspection and use." [Doc. 66-11]. This 2004 Order bears the signature of the prosecutor, John Galloway, along with Lee Asbury's signature, this time not as judge, but in the capacity of "counsel for Darryl Bailey," as noted below his signature. The June 14, 2004, Order notes the defendant's agreement to the Order. [Doc. 66-11].

Mr. Bailey argues that his 1987 conviction was lawfully expunged in 1998, and the 2004 Order to "reconstitute" or un-expunge his criminal conviction was invalid. At the hearing, counsel for Mr. Bailey argued that while he would not have been *entitled* to an expungement (assuming he had ever been convicted of a felony) under the Tennessee expungement statute, this fact does not necessarily prohibit a Criminal Court for ordering an expungement if it chose to do so. Mr. Bailey's position was that nothing in Tennessee law prohibits a criminal court judge from entering an expungement in his discretion and that the statutory expungement remedy is not exclusive for persons whose records come within the purview of the statute. Attorney Holcomb argued that if there is an ambiguity in the Tennessee expunction scheme, it must be resolved in favor of Mr. Bailey. As such, the expungement was proper and the 1987 conviction no longer existed after the 1998 Order. Mr. Bailey argued that the State of Tennessee did not appeal or contest the expungement Order and, accordingly, it became final 60 days after it was signed. The State of Tennessee had notice that the Order operated to expunge docket number 9768, as evidenced by the signature of an assistant district attorney on the face of Order. Mr. Bailey contends that because his record was expunged in 1998, the 2004 Order purportedly

9

"reconstituting" his criminal record was untimely and void.[2]  Further, Mr. Bailey argues that the 2004 Order effectively re-convicted him of a felony.  As such, Mr. Bailey was entitled to due process of law attendant with such an action by the State of Tennessee.

The government argued that the 2004 Order was valid because it corrected a clerical error.  This Order, in its entirety, sates:

> Pursuant to Rule 36 of the Tennessee Rule [sic] of Criminal Procedure to correct clerical mistakes in records, proper notice having been served on the defendant, and upon agreement of the State of Tennessee through the District Attorney General's Office and the defendant by counsel, Lee Asbury, that the records in this case were erroneously expunged and that the exhibits filed by the State as a part of its motion contain the essential elements of that criminal file, and for good cause,

> IT IS THEREFORE ORDERED that the criminal file in this case be reconstituted by designating the exhibits filed by the State in its motion as duplicates of the original file, which shall be available for public inspection and use.

The government contends that Mr. Bailey has failed to make the required preliminary showing that the agent's statement that defendant was a convicted felon was deliberately or recklessly false and was essential to the probable cause determination.  The government argued that in the absence of this preliminary showing, the defendant is not entitled to a Franks hearing to try and prove that the characterization of him as a convicted felon was a false, material fact, made deliberately or recklessly, and was essential to the probable cause determination.

In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court examined whether a defendant ever has the right, pursuant to the Fourth and Fourteenth Amendments, to contest the

---

[2]  It could be noted that, using the defendant's same logic (i.e., that the improper, void expungement became valid because of prior notice, acquiensence and no appeal by the state), the 2004 Order was entered after prior notice and acquiencence of the defendant and the defendant, likewise, filed no appeal.  Thus, even if the 2004 Order was improper and void, under the defendant's logic it, too, nonetheless became valid.

truthfulness of sworn statements of fact in a search warrant affidavit.  Sworn affidavits in

support of search warrants are, in the first instance, presumed to be valid.  <u>Franks</u>, 438 U.S. at

171.  Nevertheless, a defendant may attack the veracity of factual statements in the affidavit

under certain limited circumstances:

> [W]here the defendant makes a substantial preliminary showing
> that a false statement knowingly and intentionally, or with reckless
> disregard for the truth, was included by the affiant in the warrant
> affidavit, and if the allegedly false statement is necessary to the
> finding of probable cause, the Fourth Amendment requires that a
> hearing be held at the defendant's request.

<u>Franks</u>, 438 U.S. at 155-156; <u>see also</u> <u>United States v. Bennett</u>, 905 F.2d 931, 934 (6th Cir.

1990).  If the defendant makes this showing and is granted a "<u>Franks</u> hearing," he must show by

a preponderance of the evidence that the affiant intentionally or recklessly included false

statements, which are necessary to the probable cause finding, in the affidavit.  <u>Franks</u>, 438 U.S.

at 156; <u>Bennett</u>, 905 F.2d at 934.  If the defendant successfully makes this showing, the evidence

gained as a result of the search must be suppressed.  <u>Franks</u>, 438 U.S. at 156; <u>Bennett</u>, 905 F.2d

at 934.

The Sixth Circuit has interpreted <u>Franks</u> to include omissions and found that "except in

the very rare case where the defendant makes a strong preliminary showing that the affiant, with

an intention to mislead, excluded critical information from the affidavit, and the omission is

critical to the finding of probable cause, <u>Franks</u> is inapplicable to the omission of disputed facts."

<u>See</u> <u>United States v. Abboud</u>, 438 F.3d 554, 574 (6th Cir. 2006); <u>United States v. Sawyers</u>, 127

Fed. Appx. 174 (6th Cir. 2005); <u>Hale v. Kart</u>, 396 F.3d 721, 726 n4 (6th Cir. 2005) (citing <u>Mays

v. City of Dayton</u>, 134 F.3d 809, 815 (6th Cir. 1998)).  Whether the misstatement, or omission of

information, is material or not depends on the extent to which the issuing magistrate judge relied,

11

or would have relied, on the information in issuing the search warrant. <u>Yancey v. Carroll County, Ky.</u>, 876 F.2d 1238, 1244 (6th Cir. 1989).

As a general rule, a State of Tennessee trial court's judgment becomes final thirty days after its entry unless a timely notice of appeal or a specified post-trial motion is filed. <u>State v. Pendergrass</u>, 937 S.W. 2d 834, 836-837 (Tenn. 1996); Tenn. R. App. P. 4(a), (c); and <u>State v. Boyd</u>, 51 S.W. 3d 206, 210 (Tenn. Crim. App. 2000). There is no evidence before this Court that any such document was filed within 30 days of April 28, 1987. This Court finds that the judgment of conviction became final without contest. Because the judgment of conviction was a valid final judgment, the 1998 Order purporting to expunge docket number 9768 was void as no expungement is authorized by the statute, which reads in relevant part as follows:

> § 40-32-101. Destruction or release; construction of law
>
> (a)(1)(A) All public records of a person who has been charged with a misdemeanor or a felony shall, upon petition by that person to the court having jurisdiction in the previous action, be removed and destroyed without cost to the person, if:
>
> (i) The charge has been dismissed;
> (ii) A no true bill was returned by a grand jury;
> (iii) A verdict of not guilty was returned, whether by the judge following a bench trial or by a jury; or
> (iv) The person was arrested and released without being charged.
> …
>
> (E) A person shall *not* be entitled to the expunction of such person's records in a particular case *if the person is convicted of any offense* or charge, including a lesser included offense or charge.
> …
>
> (3) Upon petition by a defendant in the court that entered a nolle prosequi in the defendant's case, the court shall order all public records expunged.
>
> Tenn. Code Ann. § 40-32-101 [emphasis added].

There is no contention that in Mr. Bailey's case the charge was dismissed; a no true bill was returned by a grand jury; a verdict of not guilty was returned, or that he was arrested and released without being charged. As noted in the State of Tennessee's sworn Motion to Re-Establish Record of Conviction Erroneously Expunged [Doc. 87-3], case number 9768 was erroneously included in the expungement Order of 1998. Such motion was ordered served on the defendant and the return shows it was served April 15, 2004. The Order of June 14, 2004, also notes the defendant was properly served and agreed the records were erroneously expunged. It is clear from the plain language of the statute that a felony conviction does not meet the requirements of the Tennessee expungement statute. There was no basis in law for the 1998 Order purporting to expunge the conviction at issue. This Court finds the 1998 Order was void of legal significance as to docket number 9768.

Because the 1998 Order was void, it has no impact on any fact before this Court.[3] See State v. Wilson, 6 S.W. 3d 504, 507 (Tenn. 1998) (stating that any subsequent proceedings on a void document are inconsequential, and quoting Professor Elvin E. Overton, University of Tennessee College of Law: "If it's void, it's void.").

Had Magistrate Judge Guyton been made aware of all this extraneous information, he still could not have drawn any other conclusion than that Mr. Bailey was convicted of a felony in 1987 and remains a convicted felon. Magistrate Judge Guyton would have necessarily concluded that the Tennessee expungement scheme does not allow for the expunction of a felony conviction, pursuant to Tenn. Code Ann. § 40-32-101. Therefore, the 1998 expungement Order

---

[3] Black's Law Dictionary (8th ed. 2004), provides the following definition: "void, *adj.* 1. Of no legal effect; null. • The distinction between *void* and *voidable* is often of great practical importance. Whenever technical accuracy is required, *void* can be properly applied only to those provisions that are of no effect whatsoever -- those that are an absolute nullity." [emphasis in original]

was erroneous, improper and illegal insofar as it purported to expunge Mr. Bailey's felony conviction. Furthermore, the 2004 Order, to which the defendant agreed, corrected this error, and thus Magistrate Judge Guyton would have found the defendant still a convicted felon per a valid judgment.

On this issue, the Court concludes that Mr. Bailey has failed to make a substantial preliminary showing that the statement that Mr. Bailey was a convicted felon was false, let alone show that the affiant made a false statement intentionally, or with reckless disregard for the truth, and thus is not entitled to a Franks hearing.

(2) The property to be searched was a single occupancy residence.

Agent David Moore made this statement in his affidavit in support of the search warrant:

> Bailey is the only permanent, full-time resident of the Premises. The Premises is completely fenced-in, and the entrance gate is usually locked.

> Exhibit 2 at ¶ 8.

Counsel for Mr. Bailey told the Court that there were two separate houses on the land: Mr. Bailey's house and another house with a tenant. The government objected to counsel's proffer of testimony as proof for the suppression hearing in lieu of a witness. The proffer and objection devolved into a discussion on the record about the residential status of the tenant and his chattels. The government added an objection that Mr. Bailey had previously asserted in pre-trial motions that he was the sole occupant of the premises. Mr. Bailey conceded that he had previously so argued and declined to further pursue this line of argument.

The Court finds that Mr. Bailey again failed to make a substantial preliminary showing that this statement was false and is, therefore, not entitled to a Franks hearing on this basis.

14

### B. Omissions

The Sixth Circuit has found the <u>Franks</u> doctrine applies to omissions of information from affidavits as well as affirmative misrepresentations of fact. <u>Mays v. City of Dayton</u>, 134 F.3d 809, 815 (6th Cir.1998); <u>United States v. Bonds</u>, 12 F.3d 540, 568-69 (6th Cir.1993). The Sixth Circuit has treated omissions somewhat differently from falsehoods, however. The Sixth Circuit hold that affidavits with potentially material omissions are much less likely to merit a <u>Franks</u> hearing than are affidavits including allegedly false statements. <u>United States v. Atkin</u>, 107 F.3d 1213, 1217 (6th Cir.1997). The reason for this distinction is that that allowing omissions to be equally challenged would create a situation where almost every affidavit of an officer would be questioned, as certainly all facts of an investigation will not have been included in the affidavit. <u>Id.</u> <u>Accord Mays v. City of Dayton</u>, 134 F.3d 809, 815 (6th Cir.1998)(quoting with approval <u>United States v. Colkley</u>, 899 F.2d 297, 302 (4th Cir.1990) "An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation."). As an additional consideration, omissions are "less likely to present a question of impermissible official conduct that one which affirmatively includes false information." <u>United States v. Graham,</u> 275 F.3d 490, 506 (6th Cir. 2001), <u>cert. denied</u>, 535 U.S. 1026 (2002). It is with the precepts in mind that the Court turns its consideration to the material omissions of fact alleged by Mr. Bailey.

### (1) <u>Richard Bailey's felony conviction was expunged in 1998</u>.

Distinct from the assertion of a false statement, <u>supra</u> § B(1)(A)(1), Mr. Bailey contends that the affiant should have informed the Magistrate Judge that Mr. Bailey's felony conviction was expunged in 1998. The defendant argues that this omission was made intentionally or with reckless disregard for the truth. In addition to the facts set forth above, it is uncontested that

Agent Moore ran a criminal records check for Mr. Bailey on the National Crime Information Center (NCIC) database three days before he told Magistrate Judge Guyton that Mr. Bailey was a convicted felon and that this NCIC check showed no criminal history for Mr. Bailey.

The government argues that there was no expungement of the defendant's felony conviction. The Court agrees that there was never an expungement of Mr. Bailey's criminal conviction. There is no such thing under Tennessee law as an expungement of an adult felony conviction. It is prohibited by statute. The Order purporting to expunge this felony conviction (along with other cases) was corrected by court order in 2004.

Thus, this Court finds Agent Moore did not make a material omission of a true fact when he did not inform Magistrate Judge Guyton of the subsequent procedural history of Mr. Bailey's felony conviction. If Agent Moore had told Magistrate Judge Guyton that an expungement Order was entered in the case, without disclosing the subsequent 2004 Order and pleadings, that itself would have been misleading and more akin to a misrepresentation.

Even if this Court were to conclude that Agent Moore made an improper omission of fact with respect to this information, it was not material to probable cause. Had Magistrate Judge Guyton considered all the information available on this issue, he would have concluded that Mr. Bailey was a convicted felon for purposes of the statute upon which the search warrant was issued, and that the defendant's record had not been expunged.

(2)     The Affidavit relied upon an August 31, 2006, incident involving local law enforcement which took place on a different parcel of land from the one to be searched.

Mr. Bailey argues that the search warrant relied upon events which took place on a different section of land from the property it authorized police to search. At the hearing, Mr. Bailey introduced a number of exhibits depicting the parcels of land in question. Counsel argued

that the August, 31 2006, event took place on the piece of property known as Parcel 023.03, which is not mentioned in the affidavit or the search warrant. The property to be searched in the search warrant was identified as 185 Cattle Drive, the residence of Mr. Bailey located on Parcel 16.01 and bounded by Parcel 009.00 and Parcel 010.01 within one perimeter fence. Mr. Bailey argues that Parcel 023.03 is a different property, with a distinct mailing address and a separate residence. Mr. Bailey argues that the Claiborne County deputies asked him to retrieve the .220 Swift rifle from his pick-up truck located on Parcel 023.03. If the August 31, 2006, incident took place on Parcel 023.03, it could not have provided a basis for a probable cause finding that firearms would be found at 185 Cattle Drive, as no nexus between the observed criminal activity (on Parcel 023.03) and the location (on Parcels 16.01) to be searched was established.

The government responded that the August 31, 2006, events took place beyond the boundary of Parcel 023.03, past the gate and on Parcel 16.01. The government argues that Parcel 16.01 is identified in the affidavit and search warrant by its mailing address as 185 Cattle Drive, Mr. Bailey's residence. The government argues that even if the Court found that the events took place across the boundary line and on Parcel 023.03, the search warrant is not flawed. The government argues that because the deputies saw Mr. Bailey in possession of the rifle, the nexus between that criminal activity and Mr. Bailey's residence was established, regardless of whether this actually took place on Parcel 023.03.

At the hearing, the Court heard testimony on this issue from Sergeant Robert Chadwell of the Claiborne County Sheriff's Office and observed the exhibits, which included maps from the Claiborne County Property Assessor and the Claiborne County Register of Deeds, one of which was enlarged as demonstrative Exhibit 1A, several photographs, a digital video recording, and a hand drawing, and other materials. The Court has carefully reviewed these exhibits, the

17

testimony and arguments of counsel.  Of particular relevance in determining where these events took place is the aerial photograph introduced as Exhibit 8.  Exhibit 8 appears to show a natural geographic the border between Parcel 023.03 and Parcel 16.01 and the gate at which the August 31, 2006, interaction took place.  The contrasting dedicated use of these parcels of land is striking.  Parcel 023.03 at the lower portion of the photograph is wooded; while Parcel 16.01 at the upper part of the picture is grassy or planted.  Comparing Exhibit 8 with Exhibit 1A, the parcels of land appear as puzzle pieces distinguished by their vegetation.  The photographs of the gate also appear to the Court to establish its location either at the boundary line of Parcel 23.03 and Parcel 16.01 or fully on Parcel 16.01.  The affidavit states "Bailey spoke with the Deputies from inside a metal livestock gate at the entrance to the Premises."  [Affidavit, at 2].  The testimony of Sergeant Chadwell established that on August 31, 2006, he observed Mr. Bailey inside a metal livestock gate on the drive leading to the residence at 185 Cattle Drive, and that Mr. Bailey was standing on the north side of the gate, i.e., on Parcel 16.01.  No testimony to the contrary was offered.

The Court finds that Mr. Bailey was to the north of gate, on the driveway leading to his residence at 185 Cattle Drive and on Parcel 16.01 when he displayed a Swift .220 rifle to the Claiborne County Sheriff's deputies and was not on Parcel 023.03.  In any event, the driveway on which he was located runs through both parcels, leading from the public roadway to his residence, and apparently is 185 Cattle Drive.  Mr. Bailey has failed to demonstrate that the interaction occurred anywhere but 185 Cattle Drive, on Parcel 16.01 so as to constitute an omission.

The Court concludes that Mr. Bailey has failed to make a preliminary showing that the affidavit contains a misrepresentation of material fact, or any intentional misrepresentation, or a

material omission, and is not entitled to a <u>Franks</u> hearing. Defendant's Motion for Evidentiary Hearing Pursuant to <u>Franks v. Delaware</u> **[Doc. 40]** is **DENIED**.

During the time this matter has been under advisement, Mr. Bailey has submitted Motion for Reconsideration of Denial of <u>Franks</u> Hearing [Doc. 83]; the government has filed a response, [Doc. 90]; and Mr. Bailey has filed a reply to the government's response, [Doc. 91]. Mr. Bailey asks the Court to reconsider its oral ruling that he is not entitled to a <u>Franks</u> hearing. In this motion to reconsider, Mr. Bailey argues that Agent Moore substituted his own judgment to conclude that the defendant was a convicted felon rather than presenting all relevant facts to Magistrate Judge Guyton. Defendant argues that the omitted fact of the NCIC check on Mr. Bailey's record constituted a material omission and establishes grounds for a <u>Franks</u> hearing. Mr. Bailey has submitted exhibits in further support of his position, including the affidavit of long-time Knox County Criminal Court deputy clerk Joy McCroskey. The government filed a response to this motion [Doc. 90] This Court has reviewed the additional filings, although untimely, and finds they present no argument not previously before the Court and do not change the result or basis for the Court's prior ruling. For the reasons set forth supra at §1A(1), the Court finds it is not necessary to reconsider its ruling. Mr. Bailey's Motion for Reconsideration of Denial of <u>Franks</u> Hearing **[Doc. 83]** is **DENIED**.

## 2. Whether the Affidavit Fails to Establish Probable Cause for Issuance of a Search Warrant

Mr. Bailey argues that Agent Moore's affidavit in support of the search warrant failed to establish probable cause for a number of reasons. At the hearing, counsel for Mr. Bailey outlined the defendant's arguments in five categories. First, that the affidavit fails to establish probable cause on a four corners review because the information, both from Richard Bailey, Jr.,

and the Claiborne County deputies, was stale, and that the information provided by Mr. Bailey, Jr. was unreliable and uncorroborated. Second, Mr. Bailey asserts that the search warrant lacks a nexus between criminal activity and the location to be searched. Third, Mr. Bailey argues that the search warrant lacks Constitutional particularity in that it fails to adequately describe the parcel of land to be searched and the driving directions provided for the execution of the warrant are defective. Fourth, Mr. Bailey argues that the executing officers failed to comply with Federal Rule of Procedure 41. Lastly, Mr. Bailey argues that the search of the property went beyond that for which probable cause had been established in that the officers searched outbuildings, a barn and non-operational vehicles. The Court will address each argument individually, considering the merits of the argument and the government's position in turn.

> **A.**       ***Defendant Asserts the Affidavit Failed to Establish Probable Cause Because the Information from Richard Bailey, Jr. Was Unreliable, Uncorroborated and Stale.***

The defendant argues that the information Richard Bailey, Jr. gave Agent Moore did not provide a valid basis for probable cause to believe that firearms would be located at defendant's house. At the suppression hearing, counsel for Mr. Bailey gave three reasons for this assertion: that Mr. Bailey, Jr. was not a reliable witness, that his information was not corroborated, and that the passage of time had rendered any information Mr. Bailey, Jr. had stale for probable cause purposes. The government argued the converse on all three issues.

<u>1. Whether Richard Darryl Bailey, Jr. was a Reliable Source of Information</u>

As to his first issue, Mr. Bailey argued that his estranged son, Mr. Bailey, Jr., was not a reliable source of information on which to find probable cause. Mr. Bailey argued that Mr. Bailey, Jr. held great animosity for the defendant as the result of family issues. The affiant and,

in turn, the issuing Magistrate Judge, should have viewed Mr. Bailey, Jr.'s information with skepticism as he had a strong bias against the defendant. The defendant argues that Mr. Bailey Jr.'s report should not have been considered, or its veracity sharply discounted, by Magistrate Judge Guyton.

The government proposed that Mr. Bailey, Jr., was a reliable source of information because he stood to gain no benefit or advantage by lying to Agent Moore and, in fact, was subject to criminal charges had he been untruthful. The government argued that Bailey, Jr. gave his name and did not ask to remain anonymous, that his information was detailed and specific, and that he had frequent access to the house in the past. Further, the government asserted Mr. Bailey, Jr.'s willingness to be identified, his lack of criminal history (aside from a misdemeanor Driving Under the Influence conviction) and his frankness about his deteriorated relationship with his father, including the statement that he had no wish to protect the defendant, supported his credibility with the issuing Magistrate Judge.

Agent Moore included the following description of Richard Bailey, Jr.'s disposition toward the defendant in his affidavit:

> Richard Bailey [, Jr.] is estranged from Bailey and is not on good terms with him. In fact, Richard Bailey [, Jr.] is angry with Bailey over certain past conduct, and has no wish to protect him.

> Exhibit 2 at ¶ 4.

The Court observes that an estranged family member can still be a reliable and accurate source of information. The defendant has not shown that Mr. Bailey, Jr. provided information to Agent Moore with a vengeful motive; and the defendant has posited no motive at all. The affidavit only indicates the son did not wish to protect the father, apparently from his father's

continuing illegal conduct. Such willingness to acknowledge his father's criminal activity rather than to protect him, seems to make Mr. Bailey, Jr. more credible, rather than less credible. The Sixth Circuit has addressed similar deteriorated family relationships in this context.

United States v. Cooper, 1 Fed.Appx. 399, 405 (6th Cir. 2001) provides an illustrative example. In Cooper, the defendant's wife fled the marital home the night before she reported to the police that her husband, a convicted felon, possessed three guns. The defendant moved to suppress the guns by claiming that probable cause for the search warrant could not exist based on his wife's unreliable information. Cooper, 1 Fed. Appx. at 405. The husband stressed that the agents had no prior information that his wife was reliable and had not corroborated her claim. Id. at 395. The Sixth Circuit observed that "Mrs. Cooper had motive to lie as she was an angry wife who had just decided to end her rocky marriage." Cooper, 1 Fed. Appx. at 404. However, "[t]his possible motivation, by itself, does not necessarily render her statement unreliable, though." Cooper,1 Fed. Appx. at 404 (tracking the reasoning of the Fifth Circuit in United States v. Phillips, 727 F.2d 392 (5th Cir.1984)). The Sixth Circuit held that the angry wife's "explicit, detailed description of her husband's alleged criminal activity based on her own first-hand observations" lent her tip "greater weight despite any doubts the officers may have had as to her motivations." Cooper 1 Fed. Appx. at 404 (citing Illinois v. Gates, 462 U.S. 213, 234 (1983); and United States v. Hodges, 705 F.2d 106, 108 (4th Cir.1983) (refusing to reject probable cause determination based on detailed statement of former live-in girlfriend despite possibility that informant bore the defendant ill will.))

Even as to informants who remain anonymous, the Sixth Circuit applies a common sense approach:

> "Veracity," "reliability" and "basis of knowledge" are all highly relevant in determining the value of a CI's report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case.... Rather, ... they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

> United States v. Allen, 211 F.3d 970, 972 -973 (6th Cir. 2000)(citing Gates, 462 U.S. at 230.)

In Gates, the Supreme Court stated that uncertainty regarding the informant's veracity could be compensated for by a "strong showing" of basis of knowledge. Detailed information from an informant with an expressed, negative motivation has been deemed sufficiently reliable to establish probable cause. See e.g., Massachusetts v. Upton, 466 U.S. 727 (1984) (upholding search warrant based on ex-girlfriend's detailed tip of criminal activity which she observed first-hand despite her attempt to proceed anonymously, her recent break-up with the defendant, and her admitted desire to "to burn him").

The Court finds that the fact that Mr. Bailey, Jr., was angry with the defendant is not dispositive of his credibility. The Court finds that any question raised by Mr. Bailey, Jr.'s anger toward the defendant is outweighed by the other factors in favor of his credibility:  his willingness to be named, the detail of his information about the firearms, and his access to the location where the guns were kept, 185 Cattle Drive.

The information provided by Mr. Bailey, Jr. was detailed.  Mr. Bailey, Jr. told Agent Moore that:

> Bailey is armed at all times and keeps numerous firearms on the premises.  Specifically, Bailey [Jr.] told me his father's favorite firearm is a .38 caliber, Smith & Wesson, "Airweight" model

> revolver, of which he owns many, and stores them somewhere on
> the Premises in a blue food and beverage cooler.

Affidavit at ¶ 4.

The Court further observes that Mr. Bailey, Jr., as a member of the defendant's family, had ample and repeated opportunity to observe guns in Mr. Bailey's home.)). Mr. Bailey, Jr., reported to Agent Moore that he saw guns inside his father's house before their relations deteriorated some eight months before. As the Sixth Circuit has recognized, "there could hardly be more substantial evidence of the existence of the material sought and its relevance to a crime than the informant's direct viewing of the evidence in the suspect's house." United States v. Pelham, 801 F.2d 875, 878 (6th Cir.1986), accord United States v. Miller, 314 F.3d 265, 270 (6th Cir. 2002). Here, not only was there such knowledge, but very specific details given as to one type of firearms and their hidden location.

   A further factor in support of Mr. Bailey, Jr.'s credibility is the fact that he personally had purchased guns for his father. Affidavit at ¶ 4. Although the affidavit does not indicate a timeframe in which the guns were purchased in relation to Mr. Bailey's felony conviction, the Court finds this does not dilute the impact of this factor in the totality of the circumstances. Had Mr. Bailey, Jr. purchased firearms for his father before the latter's 1987 felony conviction, this fact tends to demonstrate a long-time interest in firearms and extensive gun collection, as opposed to a singular fleeting possession. Had Mr. Bailey, Jr., meant that he purchased guns for his father after 1987, this would amount to a tacit admission to crime.[4] Although this argument was expressly abandoned by the defense with a notable degree of formality [Doc. 76], this Court is free to consider a statement against penal interest as traditional veracity consideration.

---

[4] The purchase of firearms by a person who is not restricted from such purchase, made for an individual who could not legally acquire them in his own name is a violation of 18 U.S.C. §922(a)(6). See e.g., U.S. v. Lawrence, 680 F.2d 1126, 1127-28 (6th Cir. 1982).

The Supreme Court has held that if an informant's information tends to be self-incriminating, the declaration against penal interest might be considered sufficient, in and of itself, to establish reliability.  United States v. Harris, 403 U.S. 573 (1971); see also United States v. Farese, 612 F.2d 1376 (5th Cir. 1980), reh'g denied, 616 F.2d 568 (5th Cir. 1980).  In Harris, the court observed:

> Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility-*sufficient at least to support a finding of probable cause to search*.

> Harris, 403 U.S. at 583-584 [emphasis added].

To the extent Richard Bailey, Jr.'s statement as contained in the affidavit may be reasonably interpreted to indicate that he purchased guns for a convicted felon, the Court finds this fact supports his credibility.  Even if they were purchased prior thereto, his credibility is still supported as to the knowledge of the defendant's possession of such firearms.

While an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form. United States v. Allen, 211 F.3d 970, 975-976 (6th Cir. 2000).  The affidavit could state that police corroborated significant parts of the informant's story, "or there could be other indicia of the informant's reliability, such as a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal his or her name. As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause."  United States v. Jackson, 470 F.3d 299, 307 (6th Cir. 2006) (citing Allen, 211 F.3d at 976.)

This Court finds that Richard Bailey, Jr., was a reliable source of information to be considered by Magistrate Judge Guyton. The Court has considered Richard Bailey Jr.'s willingness to be named in the investigation; his detailed and specific information about the type of guns and their storage; his repeated opportunity to observe the firearms over time in his father's house; and his representation that he contributed to the collection by buying guns for his father, and weighed these against Mr. Bailey, Jr.'s admitted dislike for his father and the troubled family relations. The Court finds Richard Bailey, Jr. was a credible source of information for probable cause purposes and that in light of the totality of the circumstances, there was a fair probability that Richard Bailey, Jr.'s tip was true.

2.   Whether Richard Bailey, Jr.'s Information Was Uncorroborated

The Court will next consider the issue of corroboration. Mr. Bailey argues that Mr. Bailey, Jr.'s information was not independently corroborated, either by Agent Moore or by other events. Mr. Bailey argues that the August 31, 2006, incident involving the Claiborne County Sheriff's deputies cannot serve to corroborate Mr. Bailey, Jr.'s information because the deputies' report was itself constitutionally stale.

The government argues that the uncontroverted fact that Claiborne County deputies observed Mr. Bailey holding a firearm standing at the foot of his driveway on August 31, 2006, (along with his admission that he shot the rifle into an occupied vehicle) serves to corroborate Mr. Bailey, Jr.'s report that the defendant had guns in his house. The government argues that the deputies' information and Mr. Bailey, Jr.'s information corroborate one another.

The defendant's argument is misplaced. Probable cause may be established through information from any reliable source or sources. Draper v. United States, 358 U.S. 307, 313 (1959). In Illinois v. Gates, the need for subsequent corroboration of a source of information

26

was discussed as a means of assessing the reliability of an anonymous tip provided by someone completely unknown to the police. Gates, 462 U.S. at 244. In contrast, the reliability of an informant for a search warrant may be shown by the fact that he is a citizen informant not involved in the criminal milieu. Where a search warrant relies upon a citizen informant, the veracity, credibility, or reliability of the informant is presumed, and a specific showing of reliability is not required. This is especially true where the informant is identified by name.

Although it was not required, the Court finds that Mr. Bailey, Jr.'s statements were corroborated. Agent Moore testified that he independently confirmed the defendant was a convicted felon and that he independently confirmed that 185 Cattle Drive was the defendant's residence. The Sixth Circuit has addressed just this type of corroboration in United States v. Smith, 182 F.3d 473 (6th Cir. 1999):

> In the present case, the only evidence needed to establish probable cause of illegal activity was defendant's possession of the firearms, and corroboration that defendant was a felon and currently living on the premises. Independent investigation by the police determined that defendant was indeed a former felon, for whom it was illegal to possess firearms, and that the premises where the guns were seen was his home. Courts have acknowledged that individuals who own guns keep them at their homes.

Smith, 182 F.3d at 480, cert. denied, 530 U.S. 1206 (2000) (citing United States v. Shomo, 786 F.2d 981, 984 (10th Cir.1986); United States v. Steeves, 525 F.2d 33, 38 (8th Cir.1975); United States v. Rahn, 511 F.2d 290, 293 (10th Cir.), cert. denied, 423 U.S. 825 (1975).

Here, Agent Moore confirmed that Mr. Bailey was a convicted felon and that he resided at 185 Cattle Drive. Further, Agent Moore relayed to Magistrate Judge Guyton the information provided by the Claiborne County deputy. The Court finds that the information provided by Richard Bailey, Jr. was sufficiently corroborated by Agent Moore's independent investigation.

Additionally, the information provided by Mr. Bailey, Jr., included the statement that the defendant is "armed at all times and keeps numerous firearms on the Premises." [Affidavit at ¶ 4]. The observations of the deputies on the night of August 31, 2006, corroborated this statement where the defendant, on his residential premises, was armed with a weapon.

3. <u>Whether Richard Bailey, Jr.'s Information Was Constitutionally Stale</u>

Mr. Bailey argues that the information provided by Richard Bailey, Jr. was constitutionally stale. Mr. Bailey argues that this information could not serve as the basis for probable cause to believe the defendant possessed firearms at 185 Cattle Drive on the date of the search warrant, September 26, 2006, because he had last observed the guns at least eight months prior. Mr. Bailey asks the Court to find the affidavit presented a single instance of possession rather than an ongoing criminal activity, relying upon <u>United States v. Spikes</u>, 158 F.3d 913, 923 (6th Cir. 1998); and Wayne R. LaFave, Search and Seizure § 3.7(a) at 372 (4th ed. 2004).

The government argues that under the circumstances of this case the information was not stale. The government asserts that guns, by their nature, are an item of enduring value and would reasonably be expected to remain in a house for a long period of time, unlike drugs. The government argues that it was reasonable for the Magistrate Judge to conclude that someone known to possess an extensive collection of firearms in his home would still be likely to have them eight months later. The government asserts that the Claiborne County Sheriff's deputy's observation, as set forth in the affidavit, served to refresh Mr. Bailey Jr.'s information.[5] The

---

[5] Mr. Bailey responded in argument that even if there were corroborative value between the two items of information, the deputies' observations occurred on a separate parcel of land from that where Mr. Bailey, Jr.'s information was derived. The facts underlying this argument have been previously addressed <u>supra</u> at § 1 B(2); the Court has concluded that the incident with the deputies occurred on Parcel 16.01, 185 Cattle Drive, leading to defendant Bailey's residence.

government urges that all of the information in the affidavit must be taken together when determining sufficiency of probable cause, relying upon <u>Illinois v. Gates</u>, 462 U.S. 213, 230 (1983); <u>United States v. Greene</u>, 250 F.3d 471, 477 (6th Cir. 2001).

A search warrant may not be based upon stale information, and there must be probable cause to believe that the items sought are still located at the place to be searched. The probable cause inquiry gauges the likelihood that evidence of a crime may presently be found at a certain location. A warrant must be supported by "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." <u>Sgro v. United States</u>, 187 U.S. 206, 210 (1932). The expiration of probable cause is determined by the circumstances of each case and depends on the inherent nature of the crime. <u>See</u> <u>Sgro</u>,187 U.S. at 210-11, <u>United States v. Henson</u>, 848 F.2d 1374, 1382 (6th Cir. 1988); <u>United States v. Hython</u>, 443 F.3d 480, 485 (6th Cir. 2006).

In pre-trial motions, both Mr. Bailey and the government argued that whether information in an affidavit is stale does not depend upon an arbitrary time limitation, but is tied to the nature of the crime, the criminal, the location of the search, and the items sought. <u>United States v. Spikes</u>, 158 F.3d 913, 923-24 (6th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1086 (1999). Both counsel for Mr. Bailey and for the government agreed with the Court that the factors set out by the Sixth Circuit in <u>Spikes</u> control this inquiry.

In <u>Spikes</u>, the Sixth Circuit explained that the function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate. <u>Spikes</u>, 158 F.3d at 923. Rather, the question of staleness depends on the nature of the crime. The variables include: (1) the inherent nature or character of the crime; (2) whether the criminal is nomadic or entrenched; (3) whether the items to be seized are

perishable or of enduring utility; and (4) whether the place to be searched is a mere criminal forum of convenience or a secure operational base for criminal conduct. <u>Id</u>. The length of time between the events listed in the affidavit and the application for the warrant, "while clearly salient, is not controlling." <u>Id</u>. Where the evidence reveals that the criminal activity is "of a continuing nature" the passage of time does not necessarily present a staleness problem. <u>Spikes</u>, 158 F.3d at 924; <u>see also</u> <u>United States v. Henson,</u> 848 F.2d 1374 (6th Cir. 1988), <u>cert. denied</u>, 488 U.S. 1005 (1989) (holding that where some information in an affidavit is stale, a finding of probable cause may still be supported if it relates to protracted or continuous conduct, or if the stale information is corroborated by recent information.). As the <u>Spikes</u> variables are determinative, this Court will address them, in turn, as they apply to the facts in Mr. Bailey's case.

First, the Court considers the inherent nature or character of the crime, whether this crime was more akin to a "chance encounter in the night or regenerating conspiracy." <u>Spikes</u>, 158 F.3d at 924. Mr. Bailey is charged with possession of a firearm after having been convicted of a felony. Initially, the Court observes that the defendant's status as a convicted felony was not subject to changing or becoming stale. Possession of a firearm by a felon, without more information, could be either a chance encounter or an ongoing offense. The facts before Magistrate Judge Guyton established that Mr. Bailey was a convicted felon who possessed a substantial collection of guns at his house. Mr. Bailey Jr.'s information provided a significant background for the Magistrate Judge to conclude that an ongoing offense was being committed. Mr. Bailey, Jr. said he, and another person, had purchased guns for the defendant at different times and the defendant stored multiple examples of a favored style revolver in a food cooler on his property. Magistrate Judge Guyton was also presented with observation of an entirely

different type of gun (a Swift rifle) by different people (the deputies) months after Mr. Bailey.

Jr.'s last observation. The Court finds that Richard Bailey, Jr.'s information related to the protracted and continuous conduct of maintaining a gun collection. The act of felon in possession of a firearm, under the facts of Mr. Bailey's case, was of a continuing nature. C.f., United States v. Batchelder, 824 F.2d 563, 564 (7th Cir.1987) (reasonable to expect gun silencers were kept for eleven months because silencers were almost always purchased for personal use and were stored in the buyer's residence, usually for a long period of time.) The Court finds that the facts and circumstances of this affidavit establish that the crime was of a continuing nature. This factor does not support a conclusion that Mr. Bailey, Jr.'s information was constitutionally stale.

Next, the Court considers the characteristics of the criminal: was Mr. Bailey more appropriately characterized as nomadic or entrenched? Mr. Bailey has asserted that there is nothing in the affidavit to suggest whether he was "nomadic or entrenched," except the parcel description of his property which he argues was erroneous. The government asserts that Mr. Bailey was, in fact, entrenched.

The testimony and argument at the hearing established that all events in the affidavit took place on Mr. Bailey's contiguous property holdings, constituting over one hundred acres of land. Mr. Bailey, Jr. observed the defendant in possession of firearms at the defendant's residence, 185 Cattle Drive. The Claiborne County deputy testified that he and another patrolman saw Mr. Bailey holding a .220 Swift rifle at the driveway entrance to his property, 185 Cattle Drive. In both instances, Mr. Bailey can only be characterized as "entrenched" upon his own land, near his residence and surrounded by his land holdings, outbuildings and vehicles. Further, there was no evidence before the Court that Mr. Bailey was nomadic, that he moved around or that he kept

firearms in any other place.  The Court finds this factor cannot support Mr. Bailey's claim of staleness.

The third <u>Spikes</u> factor considers the nature of the item(s) to which the search is directed. This factor considers whether the items to be seized are perishable and easily transferable or of enduring utility to the holder.  The Sixth Circuit has placed emphasis on this factor.  <u>Spikes</u>, 158 F.3d at 923 ("Of particular relevance here is that at least one of the items to be sought was of enduring utility to the owner.").

Mr. Bailey argues that while firearms are not perishable, Congress has specifically found that firearms "move easily through interstate commerce," quoting 18 U.S.C. 922(q)(1)(C).  Mr. Bailey argues that firearms are traded, sold and otherwise transferred on such a frequent basis that they should be considered more like a perishable item than one of enduring utility.  The government asserts only that the "large cache of firearms" at issue was not perishable, relying upon <u>United States v. Lancaster</u>, 145 Fed. Appx. 508, 513 (6th Cir. 2005) and <u>United States v. Pritchett</u>, 40 Fed.Appx. 901 (6th Cir. 2002).

The Court observes that the Sixth Circuit has addressed firearms in this context.  In <u>United States v. Pritchett</u>, 40 Fed.Appx. 901 (6th Cir. 2002), the defendant therein likewise argued that four-month-old information provided in an affidavit in support of a search warrant for crates of guns at his residence was unconstitutionally stale under the <u>Spikes</u> factors.  The Sixth Circuit analysis in rejecting that argument is helpful:

> All of the above factors weigh against a finding of staleness in the instant case. The suspected crime was possession of crates of firearms and ammunition. Firearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time. Lewis asserted that she saw more than three "crates" of weapons in Pritchett's house. It might well be expected that crates of weapons would be stored semi-permanently in a house. The criminal was not nomadic but entrenched.

> Pritchett was a long-time resident of the house, which was owned by his parents. The search warrant affidavit stated that Pritchett had reported 15744 Sorrento as his address as late as October 27, 1997, …and that the utility accounts for the house had been under Pritchett's father's name since 1976. The place to be searched-Pritchett's home-was Pritchett's "secure operational base."

> Pritchett, 40 Fed.Appx. at 906 (internal citation omitted).

With exception of inventory for sales, the most common purposes for guns are protection of persons and property, collection and sport, each of which indicate an item of enduring nature. The facts adduced at the detention hearing established that on August 31, 2006, Mr. Bailey not only possessed the Swift rifle in question, but had fired it at, and hit, a car, ostensibly in defense of his livestock. Mr. Bailey told the deputies that he brought the .220 Swift rifle to his gate to defend against persons shooting at his cattle, having it at the ready to respond to this unpredicted threat, complete with ammunition. The Court also notes that Mr. Bailey, Jr.'s description of the defendant strongly suggests that he is a collector of firearms, especially his "favorite" firearms, the Smith & Wesson "Airweight" .38 revolvers. Mr. Bailey, Jr.'s information also indicates that the defendant was in possession of many guns, bought for him by others and stored in manner especially consistent with continued possession.

The Court finds that, given the testimony herein, coupled with the unambiguous Sixth Circuit holding that firearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time, this factor cannot support Mr. Bailey's claim of constitutional staleness. C.f., United States v. Smith, 182 F.3d 473, 480 (6th Cir.1999) (people tend to keep their guns at home).

The final factor to consider is the location of the alleged criminal activity. The Court should consider whether the events took place in a mere criminal forum of convenience or a

secure operational base for criminal conduct. Mr. Bailey argues that on August 31, 2006, the deputies observed him at his truck on a parcel of land that served merely as a forum of convenience because Mr. Bailey only had the .220 Swift rifle in whatever location he could best counterattack the cattle shooter. This argument misses the heart of the issue. The location of the alleged activity relates to the criminal activity to which the search warrant pertains: the act of being a felon in possession of a firearm. Certainly, at any point in time a person is likely to be found at the location most convenient to his immediate purpose, but the location of the criminal activity herein and the place to be searched herein can only be characterized as a "secure operational base" in Mr. Bailey's instance. Mr. Bailey, Jr.'s information indicated the defendant's firearms were stored on the premises and the deputies' observation of the defendant holding a firearm was on his premises. For the same reasons the Court concluded that Mr. Bailey should be characterized as entrenched, supra, the Court finds that 185 Cattle Drive was a secure operational base for the offense of felon in possession of a firearm.

After analysis of the factors from Spikes, the Court concludes that Mr. Bailey, Jr.'s information about the guns was not stale. The Spikes factors all support a holding that this case presents no staleness issue: The crime was not a chance encounter; the criminal was entrenched; the thing to be seized was of "enduring utility" and not perishable; and the place to be searched was a "secure operational base," the subject's residence. C.f., Spikes,158 F.3d at 923. The information provided by Richard Bailey, Jr. and included in the affidavit in support of this search warrant was not stale and provided valid basis for Magistrate Judge Guyton's determination of probable cause.

> ### D. *Defendant Claims the Affidavit failed to Establish Probable Cause Because the Information Provided by the Claiborne County Sheriff's Office Was Stale*

Mr. Bailey argues that the information provided to Agent Moore by the Claiborne County deputy was stale for purposes of establishing probable cause. Mr. Bailey asserts that the August 31, 2006, incident in which two deputies observed him holding a .220 Swift rifle at the gate to his property was one single, chance instance of possession and could not establish probable cause for Magistrate Judge Guyton to conclude firearms would be found at 185 Cattle Drive approximately one month later.

The government relies on the Spikes factors and argues that the crime of felon in possession of a firearm is not "a chance encounter," the defendant was entrenched, the firearms were not perishable, but were of enduring utility to Mr. Bailey, and the place to be searched was a secure operational base. The government argues that the deputies' observation served to corroborate Richard Bailey, Jr.'s information as to the ongoing criminal activity.

The Court has determined that the Spikes factors do not support a finding that Richard Bailey, Jr.'s information was stale. Supra at § 2 A(3). The defendant's argument here does not present new issues in application of the Spikes factors to the information provided by the deputies. The nature of the crime, characteristics of the offender, enduring quality of the items to be seized and the relation of the location to be searched to the offender are the same. The deputies observed a single instance of possession of a firearm by Mr. Bailey, a convicted felon, on his land at 185 Cattle Drive, under circumstances that would suggest he intended to continue possession of the .220 Swift rifle: he was actively using it to protect livestock. The information from the deputies only served to corroborate what had been learned from Mr. Bailey, Jr. Although the actual meeting of the defendant and the officers might be described (and is by Mr. Bailey) as a chance encounter, the crime is one of an ongoing, continuous nature. As ongoing

criminal activity, it is not likely or reasonable to believe that Mr. Bailey's possession of the weapon would change. There was no evidence to suggest that he was a seller of gun or that he might be expected to rid himself of the .220 Swift rifle. The Court has found no case that indicates 30 days is a time period that may make information stale for purposes of a search warrant for guns or weapons, and no authority for such proposition has been cited by the defendant. Thus, the Court finds that the information provided by the Claiborne County deputy was not stale in light of the surrounding circumstances.

### C. The Affidavit Failed to Establish Probable Cause Because it Failed to Establish an Adequate Nexus Between Criminal Activity and the Place to be Searched Such That No Reasonable Officer Would Believe There Was Authority to Search

Mr. Bailey argues the affidavit did not establish a nexus between the criminal activity alleged in the affidavit and the place to be searched, 185 Cattle Drive, such that no reasonable officer would have believed that the search was legal, relying principally upon United States v. Laughton, 409 F.3d 744 (6th Cir. 2005); United States v. Helton, 314 F.3d 812, 822 (6th Cir. 2003). Counsel for Mr. Bailey argue that the August 31, 2006, observation of Mr. Bailey with a rifle does not have a nexus with Mr. Bailey's residence and could not link the illegal conduct to Mr. Bailey's residence. The defense dismisses Mr. Bailey, Jr.'s information on the basis that it lacks any weight because it is stale and does not address the nexus established therein. In this case, even if this Court finds that possession of weapons is a crime of long duration, with each day within the eight month period that Mr. Bailey, Jr. had not been in the premises, the likelihood that the firearms remained in the premises decreased.

The government argues that Richard Bailey, Jr.'s information formed a clear nexus between the possession of firearms and the 185 Cattle Drive residence because the informant saw the felon possess gun at that location (the felon's residence), and knew Mr. Bailey stored

guns there.  The government argues that the observation of the deputies established a nexus between Mr. Bailey and the premises he occupied, which included his residence.

A search warrant affidavit must identify the place to be searched, the objects or type of evidence sought, and a nexus between the two that is, it must state why the affiant believes the evidence will likely be found in that place.  <u>United States v. Hython</u>, 443 F.3d 480, 485 (6th Cir. 2006) (citing <u>United States v. Van Shutters</u>, 163 F.3d 331, 336 (6th Cir.1998), <u>cert. denied</u>, 526 U.S. 1077 (1999)).  "[W]hether a sufficient nexus has been shown to a particular location turns in part on the type of crime being investigated, the nature of the things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places."  <u>United States v. Savoca</u>, 761 F.2d 292, 298 (6th Cir. 1985)

The criminal activity at issue here is the possession of firearms by a convicted felon.  The place to be searched was the residence of the felon.  Mr. Bailey, Jr. said that he bought guns for the defendant, that he observed guns in the defendant's house and that some guns of a specific make and model were stored (<u>i.e.</u>, hidden) in a blue food and beverage cooler there.  Next, the deputies saw the defendant with a gun on his property, at his gate on his driveway leading up to his house.  It was reasonable for the Magistrate Judge to believe that Mr. Bailey kept his gun collection safe and secure in his residence, where he could keep and eye on it and, further, that he would keep guns for protection accessible and near at hand inside the residence.

"In dealing with probable cause, …as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  <u>Brinegar v. United States</u>, 338 U.S. 160, 175 (1949).  Probability, not certainty, is the touchstone of probable cause.  <u>Hill v. California</u>, 401 U.S. 797 (1971).  This affidavit must supply sufficient facts sufficient to make a

showing of "a probability or substantial chance of criminal activity, not an actual showing of such activity" at 185 Cattle Drive.  Illinois v. Gates, 462 U.S. 213, 244 n13 (1983).  The Court finds, given the information presented to Magistrate Judge Guyton, that there was a fair probability that evidence and instrumentalities of this continuing offense would be found at the defendant's residence; the affidavit established a close nexus between the allegation of criminal activity and the place to be searched.[6]

### 3.  Whether the Search Warrant Failed to Describe the Place to be Searched With Sufficient Particularity

#### A.  Different Parcels of Land

The portion of the record relevant to this issue consists of map, chart and photograph exhibits, proffers of proof and, principally, arguments of counsel.  The parties do not dispute the accuracy of the county tax and survey maps entered into evidence.

The search warrant authorized the search of:  "185 Cattle Drive and Parcels 009.00 and 010.01, Map 019, Morgan Lane, Harrogate, Claiborne County, Tennessee." [Search Warrant, Doc. 39-2, at 1].  The proof at the hearing established that Mr. Bailey's residence was at 185 Cattle Drive and this structure is located on Parcel 016.01, which is contiguous to Parcel 09.00 and Parcel 010.01, all three of which are enclosed in one fence.

The Fourth Amendment requires that a search warrant describe the place to be searched with particularity.  U.S. Const. amend. IV.  A warrant satisfies this requirement if "the description is such that an officer with a search warrant can, with reasonable effort, ascertain and identify the place intended."  Steele v. United States, 267 U.S. 498, 503 (1925).  The test for

---

[6] In connection with this argument, Mr. Bailey maintains his position that the deputies observed him on Parcel 23.03.  The Court has already concluded that the events of August 31, 2006, took place on Parcel 16.01, or in any event, on the driveway (185 Cattle Drive) leading directly to the defendant's residence, from where it is a "fair probability" he traveled in his pick-up truck down to the gate on August 31, 2006.

determining whether a warrant is sufficiently particular contains two prongs: "(1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may be mistakenly searched." United States v. Gahagan, 865 F. 2d 1490, 1497 (6th Cir. 1989).

The Court finds no evidence to suggest any confusion on the part of Agent Moore, Magistrate Judge Guyton or the executing officers about the parcels of land the search warrant authorized to be searched. There was no evidence that indicated the executing officers were unable to locate or identify the premises or that any other premises were, or could have been, mistakenly searched. As to the parcels of land, the Court finds they were described in sufficient particularity.

### B. Incorrect Driving Directions

At the hearing, Mr. Bailey argued - and the government conceded - that the driving directions in the search warrant are technically flawed. The directions, attached to the search warrant at "Attachment B," purport to describe the route to the place to be searched. In fact, the evidence at the hearing demonstrated that a person following these directions precisely might well turn right at a traffic intersection in the city of Tazewell, to continue following North Highway 33 as indicated in the search warrant, whereas the property would be actually located by bearing to the left at a roughly straight aspect. Licensed Private Investigator Shayne Cooper testified that he followed the directions as provided in the search warrant. A digital video exhibit was introduced during Investigator Cooper's testimony showing the drive, along with photographs of the intersection in question in Tazewell. Exhibit 19 and Exhibit 18, respectively.

Investigator Cooper testified that had he continued on the route indicated he would have driven off the roadway and into a ditch.

The government argued that the mistake in the directions is not fatal to the search warrant and that the property is described in sufficient particularity nonetheless. Sergeant Chadwell of the Claiborne County Sheriff's Office testified that, locally, the straight-going route is known and referred to as "Highway 33," albeit incorrectly. Sergeant Chadwell testified that until this case, he was unaware that this reference was mistaken. He also testified that on August 31, 2006, he did not have any trouble finding it. Likewise, the Property Assessor, Ms Stanifer, testified that based on those directions she could find 185 Cattle Drive. At the hearing, it was established that all the executing officers traveled to the same, correct, address despite the alleged right turn implied by the search warrant.

In this case, it is significant that the affiant, Agent Moore, was also the executing officer. Agent Moore <u>See</u> <u>United States v. Durk</u>, 149 F.3d 464 (6th Cir. 1998). Agent Moore was both the affiant and the executing officer. [Doc. 77-2 at ¶ 3]. During his investigation, between August 31, 2006, and September 26, 2006, Agent Moore had traveled to the described premises, taken photographs of the livestock gate, residence and buildings, and had flown over the premises and taken numerous aerial photographs. [Doc. 77-2 at ¶ 4]. Those photographs were referenced in the search warrant affidavit and attached thereto, and were made an exhibit to the February 1, 2007 hearing.

The Sixth Circuit rule provides that "[t]he knowledge of the executing officers in this case is a factor which may cure any insufficiencies in the search warrant's description of the premises." <u>United States v. Brown</u>, 49 F.3d 1162, 1169 (6th Cir. 1995)(citing <u>United States v. Williamson</u>, 1 F.3d 1134, 1136 (10th Cir.1993).) Furthermore, "when one of the executing

officers is the affiant who describes the property to the judge, and the judge finds probable cause to search the property as described by the affiant, and the search is confined to the areas which the affiant described, then the search, in this case, is in compliance with the fourth amendment." United States v. Gahagan, 865 F.2d 1490, 1499 (6th Cir.), cert. denied, 492 U.S. 918 (1989).

The Court finds that the portion of the search warrant directions indicating: "travel North on Highway 33 approximately 37.5 miles to Cedar Fork Road" were in error. They should have indicated that the reader bear left at approximately 35 miles, traveling then to Cedar Fork Road. The Court finds this mistake does not undermine the particularity of the description of the location to be searched in this warrant. The Court finds, "the description is such that an officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." Steele, 267 U.S. at 503.


### 4.  Whether the Execution of the Search Warrant was Improper

#### A.  *Failure to Comply With Requirements of Rule 41*

Mr. Bailey argues that the officers who executed the search warrant failed to comply with Rule 41 of the Federal Rules of Criminal Procedure. Mr. Bailey argues that the executing officers failed to prepare and verify a copy of the inventory of the items seized as required by Rule 41(f)(2); that they failed to promptly provide a return to the issuing Magistrate Judge as required by Rule 41(f)(4); and have further failed to include a copy of the inventory of items seized with the return as required by Rule 41(f)(4).

Mr. Bailey argues that the officers completely failed to make a return with an inventory to the Magistrate Judge. Mr. Bailey relies upon the section of the return indicating "Inventory of

Person or Property Taken Pursuant to the Warrant," which is blank. [Doc. 39-5]. Mr. Bailey concedes that there are two separate "evidence logs" attached to the return, but argues the Court should not consider these as valid returns because they have not been expressly incorporated into the return and that they fail to clearly account for the items seized. Mr. Bailey argues that it is impossible to ascertain what items were seized.

At the hearing, AUSA Stone proffered that ATF Special Agent Rebecca Bobich[7] prepared and verified a handwritten inventory of the property seized in the presence of several other ATF agents before leaving Mr. Bailey's house on the date of the search. AUSA Stone proffered that Mr. Bailey refused to be present during the inventory and was permitted to sit outside on the porch and that the executing officers supplied an exact carbon copy of that handwritten inventory to Mr. Bailey before they left. Later, during the week of October 2, 2006, Agent Bobich transcribed the hand-written inventory to a word processor format, and a copy of the transcribed inventory was included in the search warrant return as "Evidence Log." Later Agent Bobich discovered a typographical error is a serial number for one of the guns, corrected the inventory and submitted it to the Magistrate Judge as "Amended Evidence Log."

The return of a search warrant must be made promptly to the Magistrate Judge designated in the warrant and must be accompanied by a written inventory of any property taken. Specifically, Rule 41(f) provides:

> **(f) Executing and Returning the Warrant.**
>
> **(1) Warrant to Search for and Seize a Person or Property.**
> **(A) Noting the Time.** The officer executing the warrant must enter on it the exact date and time it was executed.
> **(B) Inventory.** An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. The officer must do so in the presence of another officer and the person from whom, or from whose

---

[7] Agent Bobich was not present at the hearing due for medical reasons.

premises, the property was taken. If either one is not present, the officer must prepare and verify the inventory in the presence of at least one other credible person.

**(C) Receipt.** The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property.

**(D) Return.** The officer executing the warrant must promptly return it-- together with a copy of the inventory--to the magistrate judge designated on the warrant. The judge must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken and to the applicant for the warrant.

Federal Rules of Criminal Procedure, Rule 41

Both the Supreme Court and the Sixth Circuit have held that absent a showing of prejudice, an error on the return of a warrant will not taint evidence gathered as a result of an otherwise valid warrant. Cady v. Dombrowski, 413 U.S. 433, 449 (1973) ("As these items were constitutionally seized, we do not deem it constitutionally significant that they were not listed in the return of the warrant."); United States v. Charles, 138 F.3d 257, 262 (6th Cir.1998) (holding that "as a matter of law," the failure to accurately complete the return did not require the suppression of all the seized evidence); United States v. Moore, 452 F.2d 569, 573 (6th Cir.1971) (suppression not justified where defendant failed to show prejudice from the warrant return's omission of a seized item).

The Court finds that the executing officers made a prompt and complete return to the issuing Magistrate Judge. The record demonstrates that at the scene of the search, the executing officers prepared a handwritten inventory of the 112 weapons seized, some of which were found loaded and had to be securely handled, in addition to the numerous articles of ammunition identified and counted. Agent Bobich's extra efforts to check and re-check the serial numbers

provide a good example of through police practice and are not identified as an error by this Court. The Court observes in this regard:

> This Court is alert to invalidate unconstitutional searches and seizures whether with or without a warrant. By doing so, it vindicates individual liberties and strengthens the administration of justice by promoting respect for law and order. This Court is equally concerned to uphold the actions of law enforcement officers consistently following the proper constitutional course. This is no less important to the administration of justice than the invalidation of convictions because of disregard of individual rights or official overreaching. In our view the officers in this case did what the Constitution requires. *** It is vital that having done so their actions should be sustained under a system of justice responsive both to the needs of individual liberty and to the rights of the community.

> United States v. Ventresca, 380 U.S. 102, 111-112, (1965)(internal citations omitted).

However, should the return contain a technical error, Mr. Bailey has shown no prejudice suffered thereby. This issue provides no basis to suppress evidence seized pursuant to the search warrant.


### B. Search Was Overbroad

At the hearing, counsel for Mr. Bailey reported that the defendant intended to argue that, even if the Court finds the affidavit established probable cause to search his residence, this did not extend to other structures on his property. No argument or evidence was presented on this issue, however, and the Court has no factual basis from which to make a ruling as to any weapons or other evidence that may have been located in an outbuilding and, accordingly, relies on the pre-trial motions filed by the parties. Mr. Bailey objects to the search of outbuildings on his property because "the affidavit does not say which 'dwellings, barns, outbuildings, or dilapidated vehicles'" were to be searched, "[t]hus, while there may have been a nexus between

the observed conduct and the residence, vehicles, and outbuildings of Parcel 023.03, there was no nexus between the parcels described in the warrant and the observed conduct." [Doc. 39]

Agent Moore's affidavit provided the following information about the structures on the property to be searched:

> Through my training, experience, and information obtainer from other ATF agents and police officers. I know that individuals who possess weapons illegally often store them in places that are concealed from law enforcement. These locations most often include homes, outbuildings and vehicles. Bailey is the only permanent, full-time resident of the premises. The Premises is completely fenced-in, and the entrance gate is usually locked. The Premises includes a dwelling, several barns and outbuildings, and several dilapidated motor vehicles.

Affidavit at ¶ 8. Additionally, Mr. Bailey, Jr.'s statement indicates the firearms were "numerous" and "many" and "stored somewhere on the Premises." [Affidavit at ¶ 4].

The Court finds that the search warrant appropriately authorized a search of outbuildings. There is no factual record as to which outbuildings were searched, or what items, if any, were seized from them.

The Fourth Amendment requires that search warrants describe the place to be searched with particularity. A warrant satisfies this requirement "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." Steele v. United States, 267 U.S. 498, 503 (1925). This warrant, on its face, authorizes officers to search outbuildings on the premises of the defendant's property at 185 Cattle Drive. Additionally, the search warrant references the affidavit which specifically requests the search of outbuildings.

Furthermore, the Sixth Circuit has found that a search warrant's reference to the premises to be searched includes the outbuildings located within the curtilage of that premises. This case

is factually parallel to United States v. Bennett, 170 F.3d 632 (6th Cir.1999), in which a defendant argued that a search warrant for his address only included his residence and did not extend to an outbuilding located on his property, since the affidavit did not allege illegal activity in the outbuilding. The Sixth Circuit rejected the argument, stating that "there is no need to search for evidence to link the outbuilding to the allegations in the affidavit; the shop building and the residence are sufficiently connected because they are both within the curtilage of the defendant's property." Bennett, 170 F.3d at 639.

Similarly, in United States v. Campbell, 256 F.3d 390 (6th Cir. 2001) police searched a residence for firearms, including outbuildings. Because all of the buildings at the house to be searched were within the curtilage of the property, there was no need to demonstrate probable cause to search each building on the property. In addition, there was probable cause in Campbell to believe that the items to be seized could have been found in any portion of the defendant's property. Campbell, 256 F.3d at 390. The Campbell court distinguished the hypothetical example in on Maryland v. Garrison, 480 U.S. 79, 84 (1987), in which the Supreme Court stated that "probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom." This requirement of specificity in a search warrant is flexible and varies with the crime involved and the types of items sought. The Sixth Circuit has held that a description is valid "if it is as specific as the circumstances and the nature of the activity under investigation permit." United States v. Ables, 167 F.3d 1021, 1033 (6th Cir.1999); see also, United States v. Savoca, 761 F.2d 292, 298-99 (6th Cir.1985).

Unlike the case of searching a bedroom to find a lawnmower, in this case there was probable cause to believe that firearms could be found throughout Mr. Bailey's property. The Court has no information to suggest that the search in this case went beyond that which was

described in the search warrant or that for which probable cause was established in the affidavit. In fact, the Court finds that Agent Moore's affidavit went beyond that which the Sixth Circuit may require as to other structures.

### III: <u>CONCLUSION</u>

For the reasons stated herein, the Court's recommendation is as follows:

1.         That the Motion to Suppress **[Doc. 39]** be **DENIED**.

2.         That the Motion for Evidentiary Hearing Pursuant to <u>Franks v. Delaware</u> **[Doc. 40]** be **DENIED**.

3.   That the Supplemental Motion to Suppress and Supplemental Motion for Evidentiary Hearing Pursuant to <u>Franks v. Delaware</u> and Incorporated Memorandum of Law **[Doc. 66]** be **DENIED**.

4.   That the Motion for Reconsideration of Denial of <u>Franks</u> Hearing **[Doc. 83]** be **DENIED**.[8]

              Respectfully submitted,

                <u>   s/ C. Clifford Shirley, Jr.   </u>
                United States Magistrate Judge

---

[8] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide <u>de novo</u> review where objections to this report and recommendation are frivolous, conclusive, or general. <u>Mira v. Marshall</u>, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. <u>Smith v. Detroit Federation of Teachers</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).