# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:06-CR-130 |
| | ) | (VARLAN/SHIRLEY) |
| RICHARD DARYL BAILEY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The defendant, Richard Daryl Bailey, is charged with one count of being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1). This criminal case is before the Court on the defendant's Amended Motion for Certification Order [Docs. 87, 102], Amended Motion to Dismiss [Docs. 98, 100], and Objections to Report and Recommendation [Doc. 108]. An evidentiary hearing on the Amended Motion for Certification Order and Amended Motion to Dismiss was held on Thursday, May 17, 2007. The government was represented by Assistant United States Attorneys Tracy L. Stone and Steven H. Cook. Attorneys James A. H. Bell and Richard L. Holcomb represented defendant Richard Daryl Bailey ("Defendant"), who was also present. The Court took the Amended Motion for Certification Order and Amended Motion to Dismiss under advisement at the conclusion of the hearing.

## I.  Relevant Facts

As an initial matter, the Court will set forth the facts established at the May 17, 2007, evidentiary hearing.  The Court notes that Defendant initially presented argument before offering evidence, but, for the sake of clarity, the Court will first establish the facts and will then address the arguments of both parties.

### A.  Testimony of Teresa Keck

Defendant called Teresa Keck, a deputy clerk for the Claiborne County Circuit Court, as his first witness.  Ms. Keck testified she had been with the Clerk's Office since December, 2006, that her responsibilities included working with the minute books for Claiborne County Court, and that the Clerk's office was under an obligation to make minute entries within six months of court activity.  Ms. Keck stated that she had searched the minute books in the Claiborne County Court Clerk's Office and had been unable to find a record of conviction for Defendant relating to case number 9768.  Certified copies of the files from the Claiborne County Court Clerk's Office relating to Defendant were entered into evidence as Defendant's Collective Exhibit One, while a copy of the subpoena *duces tecum* served on Ms. Keck was entered as Defendant's Exhibit Two to serve as a summary of the documents Ms. Keck had been asked to provide.

Ms. Keck said that Defendant's Collective Exhibit One included copies of the indexes and minute book entries believed to relate to Defendant.  Ms. Keck testified that the index for Book 48, which covered the period of August, 1985, to January, 1987, indicated that pages 801, 802, 803, 804, and 924 of Book 48 contained minute entries relating to

Defendant. Ms. Keck stated that Pages 801 and 802 contained the indictment in case number 9768, pages 803 and 804 contained a "no true bill" indictment in case number 9769, and page 924 contained an arraignment order in case number 9768. Ms. Keck then testified that the index of Book 49, covering the period of February, 1987, through March, 1998, contained a blacked out name, but Defendant's name was not visible in the index. Ms. Keck further testified that a page by page search of Book 49 revealed one minute entry, on page352, related to Defendant, an order of continuance in case number 9768 continuing the trial to December 7, 1987.

Ms. Keck also stated that a review of Books 50 through 66, 68, and 70 through 75, as well as a review of items to be entered into the most recent minute books, revealed no records related to Defendant. Ms. Keck said that Book 68 contained a minute entry relating to Defendant's former bonding company. Ms. Keck further said that the index of Book 69 indicated that page 768 contained a minute entry related to Defendant's former bonding company, but actually contained an order in an unrelated case. Ms. Keck testified that there was no entry for the 2004 "unexpungement" in any of the minute books, nor was it included in the file of documents yet to be entered into the minute books.

On cross-examination, Ms. Keck testified that Defendant's Collective Exhibit One included a copy of the entire file of the Claiborne County Clerk's Office in case number 9768, but that she did not see a copy of a judgment of conviction in that case. Ms. Keck was then shown a copy of a document which Ms. Keck identified as a certified copy of a judgment in case number 9768 dated November 9, 2004. Ms. Keck again looked through her copy of the file in case number 9768 but was unable to locate a copy of the November 9,

2004, judgment in her file.  The government's certified copy of the judgment was entered into evidence as Government's Exhibit One.  Ms. Keck testified that her copy of the file in case number 9768 did contain a certified copy of a transcript from the proceeding where Defendant entered a guilty plea in case number 9768.  Ms. Keck stated that the file also contained a certified copy of a transcript from the Defendant's sentencing and probation hearing in case number 9768 which indicated that Defendant was sentenced to three years probation.

Ms. Keck next testified that her copy of the file in case number 9768 did contain a certified copy of the 1998 expungement order which listed six case numbers to be expunged, including case number 9768.  Ms. Keck stated that her copy of the file also contained a certified copy of the Motion to Re-Establish Record of Conviction Erroneously Expunged, filed by a deputy district attorney general on April 14, 2004, in case number 9768.  Ms. Keck said that her copy of the file also contained a certified copy of an order directing that the April 14, 2004, motion be served on Defendant and that Defendant file a written answer within thirty days.  Ms. Keck testified that the return indicated that a copy of the April 14, 2004, motion had been served on Defendant.  Ms. Keck stated that her copy of the file also contained a certified copy of an Order filed pursuant to Rule 36 of the Tennessee Rules of Criminal Procedure purporting to set aside the erroneous expungement.

Ms. Keck then testified that Defendant's Collective Exhibit One included a copy of the entire file of the Claiborne County Clerk's Office in case number 12048, relating to Defendant's former bonding company.  Ms. Keck stated that the file contained a certified

copy of a 2002 petition to grant bonding privileges to Defendant, as well as a certified copy of the April 15, 2002, Order granting the petition. Ms. Keck went on to testify that the file also contained page one of a Petition to Suspend Bonding Privileges, but did not contain the second page of that document. The government then asked Ms. Keck to compare a certified copy of the Petition to Suspend Bonding Privileges, dated April 14, 2004, to the one page contained in the copy of the file for case number 12048. Ms. Keck testified that the single page contained in her file matched the first page of the certified copy provided by the government, but that she could not find a copy of the second page in her file. The government filed its certified copy of the Petition to Suspend Bonding Privileges as Government's Exhibit Two.

Ms. Keck next testified that her file in case number 12048 also contained a certified copy of an order dated April 14, 2004, directing that the April 14, 2004, petition be served on Defendant. Ms. Keck stated that the file also contained a certified copy of a return indicating that Defendant had been served with a copy of the April 14, 2004, petition. Ms. Keck testified that her file also contained a certified copy of a three page Answer to Petition to Suspend Bonding Privileges. Ms. Keck testified that the answer indicated that Defendant admitted to having been convicted of a felony in case number 9768. Ms. Keck then stated that her file also contained a copy[1] of an order dated June 14, 2004, which suspended the bonding privileges of Defendant and of Darryl Bailey and Son Bonding Company.

---

[1]Ms. Keck did not indicate that the copy was certified, but a review of Defendant's Exhibit One reveals that the file does contain a certified copy of the June 14, 2004, order.

Ms. Keck next testified that she did not know whether other minute entries relating to case number 9768 ever existed, instead stating that she was aware of only the entries currently in the minute books. Ms. Keck was then asked to examine Government's Exhibit One. Ms. Keck testified that there was a hand-written notation of "MB-49, P-236" at the top of Government's Exhibit One. Ms. Keck testified that she had only recently started working at the Claiborne County Clerk's Office, so she was not certain, but based upon her experience, she thought the notation stood for Minute Book 49, Page 236. Ms. Keck stated that Patricia handled the Minute Books before Ms. Keck started, but that Ms. Keck did not really know her. Ms. Keck said that she believed that the notation indicated that the order marked as Government's Exhibit One had, at one time, been entered into the minute books. However, Ms. Keck also said that she could not be certain, since she was not working in the Clerk's Office at that time.

On redirect examination, Ms. Keck testified that, based on the minute books, she could not tell what happened in case number 9768 after 1987.[2] On recross examination, Ms. Keck testified that she did not bring the actual minute books, only certified copies of the pages. Ms. Keck was asked to look through her files to see if she had brought a copy of Minute Book 49 Page 236. At first Ms. Keck indicated that she did not have a copy of

_____

[2]Ms. Keck also testified that, based upon her training and experience, a Tennessee court only speaks through its minutes. The government objected to this testimony, arguing that it called for a legal conclusion. The Court reserved ruling on the objection. After reviewing the record, the Court finds that the Ms. Keck was not qualified as an expert and that the question did call for a legal conclusion, and accordingly the Court will disregard this portion of Ms. Keck's testimony. Additionally, the Court will address the issue of how a court "speaks" in the legal analysis section to follow.

Minute Book 49 Page 236, but she later seemed to locate that page within her files. Ms. Keck testified that there were lines marked through some of the entries, that the entries were not in alphabetical order, and that the entries all started with the letter "B."[3] Ms. Keck said that she was unaware of any minute book entry for the 1998 expungement order.

### B.   Testimony of Holly Jaynes

Defendant next called Holly Jaynes, the Circuit Court Clerk for Hawkins County, Tennessee. Ms. Jaynes testified that she was responsible for Hawkins County Sessions Court, civil and criminal, Circuit Court, civil and criminal, Juvenile Court, civil and criminal, and Child Support Court. Ms. Jaynes stated that she had been subpoenaed and had brought copies of the records Defendant had requested. A copy of the subpoena was entered into evidence as Defendant's Exhibit Three to serve as an index of the records Ms. Jaynes had brought, while the records were entered as Defendant's Exhibit Four.

Ms. Jaynes next testified that there were no minute entries in the Hawkin's County Clerk's Office for a conviction of Defendant. Ms. Jaynes also testified that there were no records relating to Defendant for the period of February 27, 2004, through December 15, 2006, nor were there any records of Lee Asbury appearing on Defendant's behalf for that same period. Ms. Jaynes stated that there was no record that Defendant had appeared on the docket in one of the Hawkins County courts.

---

[3]The Court has reviewed the documents in Defendant's Collective Exhibit One. Page 236 of Minute Book 49 is not included in those documents. From Ms. Keck's testimony, it appears that she was looking at the "B" index to Minute Book 49, not Page 236. The Court notes that Agent Moore later testifies that Page 236 was physically missing from Minute Book 49.

Ms. Jaynes testified that, prior to being elected Clerk in 1994, she had worked as chief office administrator for Heiskell Winstead, who was then the district attorney general for that judicial district. Ms. Jaynes stated that one of her responsibilities as chief office administrator was going to court, and that she did not remember ever seeing Lee Asbury appear in Hawkins County Criminal Court.

Ms. Jaynes then testified that when she receives an expungement order, the expungement order is not entered into the minutes, rather, all the minutes and files related to that case number are destroyed. Ms. Jaynes stated that she had never been asked to reconstitute the file and minute entries for an expunged case, nor was she sure how such a process could be accomplished. Ms. Jaynes testified that, based upon her experience, when a person enters a guilty plea, there are a number of different documents and waivers that must be filed, including, but not limited to, a waiver of arraignment and a plea agreement. Ms. Jaynes further testified that if those documents are signed by a judge, then a minute entry would also need to be made. Ms. Jaynes testified that if an attorney approached her with an order which had not been entered into the court's minutes, she would not be sure what to do.

On cross examination, Ms. Jaynes testified that she had been the Clerk for approximately thirteen years. Ms. Jaynes stated that, during her tenure as Clerk, she was unaware of an actual conviction ever having been expunged. Ms. Jaynes testified that she did not know whether such an expungement would be appropriate or not, but that if a judge signed it, she would enter it.

### C.    **Testimony of Joy McCroskey**

Defendant next called Joy McCroskey, the Senior Administrative Assistant to the Criminal Court Clerk for the Sixth Judicial District.  Ms. McCroskey testified that she has worked in the Knox County Criminal Court Clerk's Office for approximately forty years, and that one of her job responsibilities includes supervising expungements.  Ms. McCroskey stated that when she receives an expungement order, that she enters the order into the minutes, verifies that all of the entries and files related to the expunged case numbers are properly deleted, and removes the minute entry for the expungement order.  Ms. McCroskey indicated that she has previously testified as to the duties of a clerk pursuant to Tennessee law and procedure, has lectured and presented educational and professional presentations, and also trains new hires.

Ms. McCroskey further testified that when a case is expunged, all public records are destroyed, except in cases of a judicial diversion.  Ms. McCroskey testified that in the case of a judicial diversion, the records are not destroyed until after the diversion period.  Ms. McCroskey stated that, if a case had not been expunged, you could find records of it decades later, but that once a case is expunged, you would not be able to locate records for that case.

Ms. McCroskey testified that, in Knox County, minutes are kept in a minute book and that each judge's courtroom clerk is responsible for keeping the minute books and making sure they are signed by the judge.  Ms. McCroskey indicated that, based upon her experience and training, a court speaks through its minutes.  Ms. McCroskey stated that she would not know how to go about reconstituting a case file after it had been expunged, because all of the

documents would have been destroyed. Ms. McCroskey testified that the affidavit she had provided in the instant case was true and accurate.

On cross examination, Ms. McCroskey testified that it is her job to follow court orders, not to decide whether those orders are correct. Ms. McCroskey stated that in all of her years of experience, she had never seen a criminal conviction be expunged. Ms. McCroskey testified that when she provided her affidavit, she did not know that the expungement in question involved a felony conviction, and that if she had know that, it probably would have affected her affidavit. Ms. McCroskey indicated that she did not believe it was legal to expunge a felony conviction. Ms. McCroskey testified that if she were to receive an order expunging a felony conviction, she might talk to the judge, but would have to follow the order if the judge insisted. Ms. McCroskey testified that she would have a professional and ethical problem following such an order, though.

### D.     Testimony of Jody Smith

The Defendant next called Jody Smith, paralegal to James A. H. Bell. Ms. Smith indicated that, before working with Mr. Bell, she had worked at the Claiborne County Circuit Court Clerk's Office and had also worked with a different attorney. Ms. Smith testified that she had completed a page by page search of the minute books in the Claiborne County Circuit Court Clerk's Office in order to locate minute entries related to Defendant. Ms. Smith testified that Defendant's name was not located in the index for Book 49,[4] and that the

---

[4]Book 49 would have contained entries relating to Defendant's alleged 1987 felony conviction.

only minute entry she could locate was an entry related to a continuance in case number 9768. Ms. Smith was unable to locate a judgment of conviction for Defendant in the minute books of both Claiborne and Hawkins County.

On cross examination, Ms. Smith testified that some of the pages of Book 49 were missing. Ms. Smith testified that she could not recall if page 239 [sic] of Book 49 was missing. On redirect examination, Ms. Smith testified that page 352 of Book 49 contained an order of continuance in case number 9768, and that was the only page in Book 49 containing a minute entry relating to Defendant. On recross examination, Ms. Smith testified that she could not recall which books had pages missing, and that she could not tell which pages might have once contained entries relating to Defendant because the page numbers in the index had also been blacked out. Ms. Smith testified that, prior to working with Mr. Bell, she had worked with an attorney by the name of Mr. Stone. Ms. Smith testified that the Mr. Stone she had worked with was not the same Mr. Stone representing the government in the instant case.

### E. Testimony of Patricia Brooks

The government then called Patricia Books. Ms. Brooks testified that she currently worked at the New Tazewell Wal-Mart, but had previously worked for the Claiborne County Circuit Court Clerk. Ms. Brooks indicated that she had worked in the Clerk's Office for approximately twenty years, but that her employment was terminated on October 31, 2006. Ms. Brooks testified that she was told that her employment with the Clerk's Office was being terminated for professional and personal reasons, but was unaware of any other details.

Ms. Brooks testified that she knew Defendant as a friend. When asked if she had a romantic relationship with Defendant, Ms. Brooks stated that she had a friendship relationship with Defendant. Ms. Brooks testified that she did not live with Defendant. Ms. Brooks testified that she sometimes stayed at Defendant's house, since he was not there, but that she did not live there. When asked if she were Defendant's girlfriend, Ms. Brooks testified that she was Defendant's friend, and had been his friend for a number of years. Ms. Brooks testified that, at times, she had slept in the same room and in the same bed as Defendant.

Ms. Brooks testified that her former title at the Clerk's Office was Deputy Clerk, and that her duties included answering the phone, filing papers, and filing both civil and criminal cases. Ms. Brooks stated that she had been Judge Sexton's clerk, so she attended court with Judge Sexton and kept the minute books for Judge Sexton. Ms. Brooks testified that she did not keep the minute books in 1987, and did not meet Defendant until 1988.

Ms. Brooks testified that in 1998 her duties included handling criminal court and that she did work with the minute books, including handling expungements. Ms. Brooks did not recall handling Defendant's 1998 expungement order. Ms. Brooks testified that she had seen the order, and that the order was signed by Judge Asbury and possibly by then District Attorney James [sic] Sexton.[5] Ms. Brooks indicated that she could not remember if she had handed that order to then District Attorney Sexton to be signed. Ms. Brooks testified that she

---

[5]It would appear that Ms. Brooks meant Shayne Sexton, rather than James Sexton.

was friends with Defendant in 1998, that she probably had handled some minute entries related to Defendant, but that she specifically remembered that she had not expunged, redacted, or removed any of Defendant's records or minute entries.

Ms. Brooks was next asked to look at Government's Exhibit One, which Ms. Brooks identified as a judgment of conviction in Defendant's case number 9768. Ms. Brooks testified that the order included a hand written notation in the top right corner and that it appeared to say either MB-44 P-236 or MB-49 P-236. Ms. Brooks said that she had not made the notation. Ms. Brooks stated that when she had been trained to perform her former job as a deputy clerk, she was taught to make such a notation on orders to indicate on what minute book and what page an order was entered.

On cross examination, Ms. Brooks testified that she had been working at the Clerk's Office in June, 2004, and probably worked most of the days during that month. Ms. Brooks testified that she had checked her time sheet, though, and had not worked on June 14, 2004, nor had she worked on June 15, 2004. The time sheet was then entered into evidence as Defendant's Exhibit Five. Defendant then moved into evidence as Defendant's Exhibit Six documents relating to an expungement, and later "un-expungement," in an unrelated case, number 10062, State of Tennessee v. Charles Wayne Poore. Ms. Brooks testified that she thought that the minutes for the Poore case had been reconstituted, but she was not certain.

On redirect examination, Ms. Brooks testified that, in 2004, she had been aware of the Poore expungement. Ms. Brooks stated that the Poore expungement involved a felony

conviction, and that it had been expunged. Ms. Brooks indicated that she did not recall speaking to Judge Sexton about the Poore expungement.

F.    **Testimony of Billy Ray Cheek**

The government next called Billy Ray Cheek, the Circuit Court Clerk of Claiborne County. Mr. Cheek testified that he had been the Clerk for thirteen and a half years. Mr. Cheek stated that his responsibilities, in general, included keeping the records and minutes for civil and criminal sessions court, civil and criminal circuit court, and civil and criminal juvenile court in Claiborne County. Mr. Cheek stated he had worked in the Clerk's Office before being elected Clerk, and that Ms. Brooks began working in the Clerk's Office prior to Mr. Cheek's having been elected. Mr. Cheek testified that Ms. Brooks handled the Claiborne County Circuit Court, and that her duties included, among other things, handling minute book entries. Mr. Cheek stated that Ms. Brooks had sole responsibility for handling the Circuit Court minute books.

Mr. Cheek testified that he was aware of Defendant's case number 9768, but that it had occurred prior to Mr. Cheek's tenure as Clerk. Mr. Cheek testified that he was aware of that case because the Clerk's Office had to reconstitute the file after it had been expunged. Mr. Cheek said that there had also been an expungement of another person's felony conviction, possibly a Mr. Green, but Mr. Cheek was not certain. Mr. Cheek indicated that Defendant's record in case number 9768 was destroyed and the minute entries had been blacked out. Mr. Cheek testified that he believed Ms. Brooks had handled the expungement

14

in case number 9768, because it was her responsibility and because Mr. Cheek was not aware of anyone else who would have done it.

Mr. Cheek then testified that in 2004, the file in case number 9768 was reconstituted from copies of documents provided by Mr. John Galloway, an assistant district attorney in the eighth judicial district. Mr. Cheek said that, after receiving the documents from Mr. Galloway, he directed Ms. Brooks to do everything that needed to be done to reconstitute the file in case number 9768, including making the appropriate entries in the minute books. Mr. Cheek testified that Ms. Brooks apparently did not follow his directions, because the minute entries had not been made. Mr. Cheek indicated that Ms. Brooks was no longer employed in his office because of an article that appeared in the Knoxville News-Sentinel. Mr. Cheek stated that the article covered an interview Judge Sexton had given to a News-Sentinel reporter. Mr. Cheek testified that, according to the article, Ms. Brooks had misled Judge Sexton into signing an expungement order that should never have been signed. Mr. Cheek stated that Ms. Brooks resigned. Mr. Cheek indicated that he had asked Ms. Brooks to resign and that he had explained the reasons for his decision, the same reasons he had testified to in the instant hearing. Mr. Cheek testified that he did not know whether a copy of the judgment of conviction was currently in Defendant's file for case number 9768, but that a copy was in the file at one point.

On cross examination, Mr. Cheek testified that the judgment of conviction still had not been entered into the minutes and that the minute books would not evidence that Defendant had been convicted of a crime. Mr. Cheek agreed that a court speaks through its

minutes, and that he is required to destroy all records in a case when that case is expunged. Mr. Cheek testified that the record in case number 9768 was reconstituted from the documents provided by Assistant District Attorney General John Galloway, even though Mr. Galloway was not involved in the original prosecution of case number 9768. Mr. Cheek testified that it was his understanding that the district attorney's office had kept the records. Mr. Cheek stated that he did not ask anyone else for records, nor did he perform an independent search for records, but that all of the records came from Mr. Galloway.

Mr. Cheek was then shown a certified copy of the 1998 expungement order. Mr. Cheek testified that the order appeared to be signed by Judge Asbury and by then Assistant District Attorney General Shayne Sexton. Mr. Cheek also testified that it appeared that one of the docket numbers to be expunged had been changed, specifically, that in case number 9768, the eight appeared to have been changed. Mr. Cheek indicated that the change was more obvious on the original of the document, but he did not know where the original copy was.

Mr. Cheek was then shown a copy of an expungement order, signed by Judge Sexton and dated September 8, 2000, which expunged the record of a Mr. Poore, who was represented by Mr. Estep, in case number 10062. Mr. Cheek indicated that cases are filed sequentially, so an older case would have a smaller case number. Mr. Cheek testified that he believed the 2004 unexpungement order would have been entered on April 14, 2004, but

the government conceded that the order was actually entered either June 14, 2004, or June 15, 2004, and that Mr. Cheek was perhaps just confused on the date.[6]

On redirect examination, Mr. Cheek testified that he did not remember the timing of the two cases that were expunged, just that he remembered there was a problem because two felony conviction cases had been expunged. Mr. Cheek remembered that Mr. Estep was the attorney in the second case.

The parties then stipulated that Minute Book 49, Page 236 was physically missing from the minute book. The government offered Government's Collective Exhibit Three in support of this stipulation. The government then offered into evidence Government's Exhibit Four, a certified copy of the judgment of conviction in case number 9768, the copy having been certified on September 28, 2006.

### G. Testimony of Wade Moore

The government then called Wade Moore, an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Mr. Moore testified that he is the ATF case agent in the case against Defendant. Mr. Moore stated that he had just returned from the Claiborne County Circuit Court Clerk's Office to retrieve a copy of documents from Minute Book 49 entered in Government's Collective Exhibit Three. Mr. Moore testified that, after inspecting the actual minute book with Ms. Keck, that he and Ms. Keck had been able to

---

[6]The time records of Ms. Brooks, Defendant's Exhibit 5, indicate that she did not work on June 14-15, 2004.

make out a pen impression on the page of the number 9768 under the blacked out entry in the B index of Minute Book 49.

## II.    <u>Amended Motion to Dismiss</u>

In his amended motion to dismiss, Defendant contends that the indictment in this case fails to state an offense and fails to invoke the Court's jurisdiction.  Defendant contends that, under Tennessee law, he is not a convicted felon, and therefore the indictment in this matter should be dismissed as a matter of law.  Defendant also contends that Tennessee courts only speak through their minutes, and, in the absence of a minute entry for a judgment of conviction, Defendant cannot be a convicted felon.  The government opposes Defendant's motion, arguing that the indictment is valid and that the expungement in question was void *ab initio*.

Motions to dismiss are governed by Rule 12 of the Federal Rules of Criminal Procedure, which permits pretrial consideration of any defense "the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2).  Generally, a defense can be determined before trial if it involves questions of law instead of questions of fact on the merits of criminal liability.  *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997). Accordingly, the defense may use a Rule 12(b) motion to raise for consideration such matters as "former jeopardy, former conviction, former acquittal, statute of limitations, immunity [and] lack of jurisdiction." *Id*. (quoting *United States v. Smith*, 866 F.2d 1092, 1096 n.3 (9th Cir. 1989)). In considering such motions, a trial court may "ordinarily make preliminary

findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder." *Craft*, 105 F.3d at 1126.

An indictment valid on its face may not be dismissed on the ground it is based on inadequate or insufficient evidence. *United States v. Williams*, 504 U.S. 36, 54 (1992). Hence, a court cannot consider a factual challenge to an indictment purporting to show a defect consisting solely of insufficient evidence to prove a particular charge. Where a defendant's pretrial motion to dismiss requires the court to find facts that make up the elements of the case, a determination which would normally be reserved to the jury at trial, the motion to dismiss should be denied:

> Rule 12(b)(1) of the Federal Rules of Criminal Procedure, which cautions the trial judge that he may consider on a motion to dismiss the indictment only those objections that are "capable of determination without the trial of the general issue," indicates that evidentiary questions of this type should not be determined on such a motion.

*United States v. Knox*, 396 U.S. 77, 83 n. 7 (1969). In essence, a motion to dismiss should be denied if it requires a pretrial test of the government's evidence:

> Rule 12(b)(1) permits the raising by motion of defenses or objections only where they are "capable of determination without the trial of the general issue," the general issue being the issue presented by the allegations of the indictment and the plea. Allegations of the indictment essential to prove the offense charged and the pleas in answer to such allegations require a trial of the general issue. Here, the issue presented by the defense or objections raised by appellants in their motions is that the allegations of the indictment are false and untrue. This is the general issue, and this issue could only be determined on the

> trial. Appellants, therefore, under Rule 12, can not present such
> a defense or raise such an objection by a motion to dismiss the
> indictment.

*Universal Milk Bottle Serv. v. United States*, 188 F.2d 959, 962 (6th Cir. 1951), *see also*

*United States v. Short*, 671 F.2d 178, 181-82 (6th Cir. 1982).

In resolving Defendant's motion to dismiss, the Court notes that Defendant has raised

a number of interrelated sub-issues. However, the two major issues of law before the Court

are the validity of the 1998 expungement and the determination of what legal effect the

absence of minute entries for the judgment of conviction in case number 9768 has in the

instant case. Once these two questions of law are resolved, all related issues are equally

answered.

### A.   The 1998 Expungement Order

The government contends that Defendant is a convicted felon, and offers a certified

copy of a 1987 judgment of conviction in case number 9768, Government's Exhibit One, in

support of its claim. Defendant contends that he is not a convicted felon, and offers in

support of his claim a certified copy of an order of expungement, part of Defendant's

Collective Exhibit One, that purportedly expunged six cases, including case number 9768.

The existence of the 1987 felony conviction in case number 9768 is an essential element of

the government's case against Defendant and, as such, the Court leaves that issue for the

eventual consideration of a jury. However, before this case can reach a jury, the Court must

determine as a matter of law whether case number 9768 was expunged. Therefore the Court

will address the validity of the 1998 expungement while leaving the underlying conviction for a jury's consideration.

Defendant is currently charged with being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1). The state law in the jurisdiction where the crime occurred determines if the conviction falls under 18 U.S.C. § 922(g)(1).

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. 921(a)(20). The Sixth Circuit has held that if a state has restored civil rights to a felon, without expressly limiting the felon's firearm privileges, then the felon is not subject to federal firearms disabilities. *United States v. Cassidy*, 899 F.2d 543, 546 (6th Cir. 1990). However, if there is any abrogation or limitation at all of a convicted person's rights with respect to his ability to possess or carry firearms, then federal law does apply, and the convicted person may not possess any firearms whether his rights have been restored by the state or not. *Caron v. United States*, 524 U.S. 308 (1998). A court must look to the whole of state law to determine whether a convicted felon's firearms privileges have been expressly restricted. *Cassidy*, 899 F.2d at 546. Accordingly, if Defendant's only felony conviction has been properly expunged, then Defendant would not be subject to 18 U.S.C. § 922(g)(1).

Tennessee's expungement statute provides, in pertinent part, that

> [a]ll public records of a person who has been charged with a
> misdemeanor or a felony shall, upon petition by that person to
> the court having jurisdiction in the previous action, be removed
> and destroyed without cost to the person, if: (I) [t]he charge has
> been dismissed; (ii) [a] no true bill was returned by a grand
> jury; (iii) [a] verdict of not guilty was returned, whether by the
> judge following a bench trial or by a jury; or (iv) [t]he person
> was arrested and released without being charged.

Tenn. Code Ann. § 40-32-101(a)(1)(A). The law further provides that "[a] person shall not
be entitled to the expunction of such person's records in a particular case if the person is
convicted of any offense or charge, including a lesser included offense or charge." *Id*. at
(a)(1)(E).

Defendant contends that the use of the word "entitled" implies that, even though an
individual might not be guaranteed an expungement, that a court may, at its discretion,
expunge a felony conviction. However, the Tennessee Supreme Court disagrees with
Defendant's position. In *State v. Jennings*, 130 S.W.3d 43, 47 (Tenn. 2004), the Tennessee
Supreme Court, citing a lower court with approval, held that

> the Court is of the opinion that the legislature was specific in
> drafting [the expungement] statute and setting forth the precise
> dispositions for which expungement would be available.
> Granting an expungement [in a case that does not fall within the
> statute] would be a violation of the separation of powers by
> enlarging the scope of the statute beyond the clear and ordinary
> language contained therein.

*Id*. In addition, the Tennessee Court of Criminal Appeals has held that "the legislature's
exclusion of the trial court's discretion as a basis upon which to grant expungement, results

in a finding that the trial court has no such discretion." *State v. Blanchard*, 100 S.W.3d 226, 229 (Tenn. Crim. App. 2002). Accordingly, as a matter of law, the Court finds that an expungement is allowed under Tennessee law only when: (1) the charge has been dismissed; (2) a no true bill was returned by a grand jury; (3) a verdict of not guilty was returned, whether by the judge following a bench trial or by a jury; or (4) the person was arrested and released without being charged. Consequently, there is no such thing as a discretionary expungement in Tennessee.

Accordingly, if the 1998 expungement of case number 9768 occurred in the absence of one of the four statutory pre-requisites, then the court issuing the expungement acted outside its jurisdiction. A court may not act outside its jurisdiction, and any actions outside of a court's jurisdiction are void and of no legal effect. *See Gentry v. Gentry*, 924 S.W.2d 678, (Tenn. 1996) ("[a] decree is absolutely void if it appears on the face of the record itself . . . that the court had no general jurisdiction of the subject matter"); *New York Casualty Co. v. Lawson*, 24 S.W.2d 881, 883 (Tenn. 1929) ("[a] void judgment is one which shows upon the face of the record a want of jurisdiction in the court assuming to render the judgment, which want of jurisdiction may be either of the person, or of the subject-matter generally, or of the particular question attempted to be decided or the relief assumed to be given" ); *Churchwell v. Callens*, 36 Tenn. App. 119, 131 (Tenn. Ct. App. 1952) (holding that a void judgment binds no one).

After a review of the facts presented to this Court on the expungement issue, the Court finds that the court issuing the 1998 expungement acted outside its jurisdiction and that the

expungement was void and of no legal effect as to case number 9768. The evidence of record shows that Defendant pled guilty to a felony in case number 9768 and was sentenced to probation.[7] In addition, during the February 26, 2007, evidentiary hearing before Judge Shirley, Defendant's counsel represented to the Court that a probation officer had indicated that Defendant did serve his period of probation in case number 9768. Given that Defendant entered a guilty plea and was sentenced to, and served, probation, it is clear that the second, third, and fourth pre-requisites to an expungement were not satisfied.

As far as the first factor, there is simply no evidence of record, nor even a proffer of evidence, to support the contention that the charges against Defendant in case number 9768 were dismissed. Instead, all of the evidence shows that Defendant entered a guilty plea and served his period of probation. Accordingly, the Court finds that Defendant did not satisfy one of the four prerequisites for an expungement, therefore the 1998 expungement order in case number 9768 was void and of no legal effect. As a matter of law, case number 9768 was never legally expunged.

The Court notes that the Tennessee Court of Criminal Appeals has held that, in the face of an erroneous expungement, it was correct for a court to amend the erroneous order within thirty days. *Sneed v. State*, No. 01C01-9803-CC-00117, 1999 Tenn. Crim. App.

---

[7]Specifically, Defendant's Collective Exhibit One contains certified copies of the Transcript of Proceedings on Entry of Guilty Plea in case number 9768, during which proceeding Defendant entered a guilty plea, and of the Transcript of Proceedings of Sentencing/Probation Hearing in case number 9768, during which proceeding Defendant was sentenced to probation. Based upon those documents, it is clear that Defendant pled guilty to a felony, possession of a schedule III controlled substance.

LEXIS 462, at *5 (Tenn. Crim. App. May 12, 1999). However, given that the lower court in *Sneed* had corrected its error prior to appeal, the *Sneed* court had no need to address the question of whether the erroneous expungement was void. Given Tennessee jurisprudence on the results of a court acting outside of its jurisdiction, and given Tennessee jurisprudence on when an expungement may be granted, it is clear that an erroneous expungement is void, and the Court finds no discrepancy between the current ruling and *Sneed*.

As an alternative ground for the Court's ruling, the Court finds the testimony of Mr. Cheek enlightening as to the circumstances behind the expungement of case number 9768. Mr. Cheek testified that it appeared that the expungement order had been altered, i.e., that the eight in case number 9768 had been changed. After examining the expungement order [Defendant's Collective Exhibit One], the Court agrees that it appears that the eight in case number 9768 has been changed, and that it appears that case number 9768 was originally case number 9769. The Court notes that case number 9769 [Doc. 100, Attachment 5] involved a "no true bill" against Defendant, and thus was eligible for expungement. Accordingly, to extent that the expungement order was altered by a third party,[8] the Court again finds that the expungement order was void and of no legal effect as to case number 9768.

_____

[8]The Court notes that there is no evidence that Defendant was in any way responsible for the alteration of the expungement order. Even if Defendant were responsible, though, that would be of no consequence to Defendant's current criminal charges, as the equitable principle of unclean hands does not apply to a criminal proceeding. *Sorrells v. United States*, 287 U.S. 435, 450 (U.S. 1932) ("Where courts of equity refuse equitable relief because complainants come with unclean hands, they are administering the principles of equitable jurisprudence governing equitable rights. But in a criminal prosecution, the statute defining the offense is necessarily the law of the case").

In light of the Court's ruling, the Court need not address Defendant's arguments regarding the 2004 unexpungement order. Given that the 1998 order had no legal effect as to case number 9768, Defendant never legally had his rights restored,[9] rendering the 2004 order effectively superfluous.

## B.  Minute Entries

Defendant also argues that a Tennessee court may only speak through its minutes and that, in the absence of any minute entries confirming a felony conviction in case number 9768, there was no conviction. It is true that, in general, Tennessee courts speak through their minutes, but a missing or erroneous minute entry is a correctable error. *Adoption of Gillis v. Eggelston*, 543 S.W.2d 846, 847 (Tenn. 1976) ("It is a truism that the trial court speaks through its minutes, but the truism does not preclude the entry of a judgment *nunc pro tunc* to make the minutes speak the truth."). Tennessee law holds that the failure to create a minute entry does not necessarily invalidate or delay a judgment of conviction: "where a judgment is pronounced but not entered, it may be later entered *nunc pro tunc*, as of the date of its pronouncement, provided the requisite facts appear of record to justify its entry." *Thomas v. State*, 337 S.W.2d 1, 4 (Tenn. 1960). In addition, when there is a conflict between a minute entry and a transcript of the proceedings, the transcript controls. *State v. Zyla*, 628 S.W.2d 39, 42 (Tenn. Crim. App. 1981).

---

[9]The Court notes that Defendant currently has a valid hunting and fishing license [Doc. 98, Attachment 10] and is a registered voter [Doc. 98, Attachment 11]. The fact that various state agencies may have erroneously allowed Defendant to exercise rights to which he is not entitled does not alter this Court's ruling.

Defendant takes the position that there are no minute entries relating to the judgment of conviction in case number 9768. However, based upon the testimony of Patricia Brooks and based upon Government's Exhibit One, the Court finds that a minute entry recording the judgment of conviction in case number 9768 was made in Minute Book 49, Page 236. However, as the parties stipulated, that page is now physically missing. While the page may be missing, though, transcripts of Defendant's change of plea and sentencing in case number 9768 do exist. [Defendant's Collective Exhibit One].

In light of the Court's ruling that the order of expungement was of no legal effect as to case number 9768, there was no legal authority for the minute entries in case number 9768 to be altered or destroyed. Given that Minute Book 49, Page 236 has been physically removed, though done so without legal authority, the Court finds that the erroneous removal has created a discrepancy between the minutes and the transcripts, and that the transcripts control. Therefore, the Court finds that the current absence of a minute entry for the judgment of conviction in case number 9768 is of no consequence.[10]

### C.    Indictment in the Instant Case

Having taken the whole of Tennessee law into consideration, and having found that the expungement order was of no legal effect as to case number 9768 and that the current absence of minute entries for the judgment of conviction in case number 9768 is of no legal

---

[10]As an additional basis for this ruling, the Court notes that the Sixth Circuit, in resolving a conflict between a Tennessee court judgment and a Tennessee court minute entry, has held that a court speaks through its judgments, not its minutes. *United States v. Holloway*, No. 96-6344, 1998 U.S. App. LEXIS 3939, at *6 (6th Cir. 1998).

consequence, the Court has now resolved the questions of law raised by Defendant's amended motion to dismiss. The Court finds that the issues of law raised by Defendant in support of his motion to dismiss provide no legal basis for dismissing the instant indictment. Accordingly, the Court finds that Defendant's amended motion to dismiss [Docs. 98, 100] is not well-taken, and the same is hereby **DENIED**.

## III. <u>Amended Motion for Certification Order</u>

Defendant also moves the Court to certify several questions of law to the Tennessee Supreme Court to aid this Court in resolving the issue[11] of whether Defendant is a convicted felon under Tennessee law. Given that the Court has resolved all relevant questions of law relating to Defendant's expungement, there is no need to certify a question to the Tennessee Supreme Court. Accordingly, Defendant's amended motion for certification order [Docs. 87, 102] is **DENIED**.

## IV. <u>Objections to Judge Shirley's Report and Recommendation</u>

On March 28, 2007, Judge Shirley filed a Report and Recommendation [Doc. 94] addressing four motions filed by Defendant: (1) Motion to Suppress [Doc. 39]; (2) Motion

---

[11]The Court notes that Defendant has raised a number of inter-related issues, including, but not limited to, the validity of the 1998 expungement order and the validity of the later unexpungement order. The Court's summary of the issues here is in no way intended to limit Defendant's arguments, rather, in light of the Court's rulings above, and in the interest of judicial economy, the Court chooses to merely summarize the issues raised by Defendant rather than repeat them verbatim.

for Evidentiary Hearing Pursuant to *Franks v. Delaware* [Doc. 40]; (3) Supplemental Motion to Suppress and Supplemental Motion for Evidentiary Hearing Pursuant to *Franks v. Delaware* [Doc. 66]; and (4) Motion for Reconsideration of Denial of *Franks* Hearing [Doc. 83]. Judge Shirley recommended that all four motions be denied. Defendant filed timely objections to the report and recommendation [Doc. 108], the government has responded to those objections [Doc. 125], and the objections are now ripe for adjudication.

As required by 28 U.S.C. § 636(b)(1), the Court has undertaken a *de novo* review of those portions of the R&R to which the defendant has objected. In doing so, the Court has carefully considered Judge Shirley's R&R, the underlying briefs, and the parties' briefs regarding the pending objections. Defendant has raised a number of specific objections to Judge Shirley's report and recommendation. The Court will address each of these objections in turn.

### A.    Objection 1

Defendant first objects to Judge Shirley's decision to continue the suppression hearing. Defendant also objects to Judge Shirley's implication that Defendant was presenting new theories in support of Defendant's motion to suppress, and Judge Shirley's determination that the period between the February 1, 2007, suppression hearing and the February 26 ,2007, suppression hearing is excludable under the Speedy Trial Act.

The February 1, 2007, hearing began with defense counsel informing Judge Shirley that one of Defendant's witness was running late and that the witness would testify in support of Defendant's claim that the law enforcement officers searched the wrong premises when

they executed the search warrant in the instant case. [Doc 69 at p. 1-2]. Judge Shirley asked defense counsel where, in their brief, they had raised the issue of the wrong premises having been searched. [*Id*. at p. 2]. Defense counsel argued that their general statement that the search violated the particularity requirement of the Fourth Amendment properly raised that issue. [*Id*.]. Counsel for the government requested additional time to respond to the specific argument first raised by Defendant at the hearing, arguing that defense counsel had engaged in "sandbagging." [*Id*. at p. 16]. Judge Shirley allowed the hearing to proceed in a limited fashion, but ordered Defendant to file a supplemental motion setting forth his specific arguments, then continued the hearing until such time as the government was able to respond to Defendant's supplements.

The Sixth Circuit has held that a general statement of the law is insufficient to raise properly a specific issue. *United States v. Haas*, 35 Fed. Appx. 149, 152 (6th Cir. 2002) ("It is not enough for [defendant] to complain on appeal that although his pre-trial motions to suppress 'did not focus' on these specific objections, the district court should have understood his arguments from his brief general statement of the hornbook law governing review of the validity of a search warrant. [Defendant] waived those objections."). Accordingly, Defendant's general citation to the peculiarity requirements of the Fourth Amendment did not properly raise the issue of the wrong premises having been searched, so Judge Shirley was justified in requesting supplemental briefing and continuing the hearing.

Additionally, it was clear, from the government's request of additional time, that a continuance of the hearing was needed and that a failure to do so would result in a

miscarriage of justice because counsel for the government would otherwise not have been given the reasonable time necessary for effective preparation. 18 U.S.C. § 3161(h)(8)(B)(I) and (iv). Given that any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excludable, and given that the continuance of the hearing was needed, the Court finds that the delay was justified and properly excludable under the Speedy Trial Act. *Id*. at (h)(1)(F). Accordingly, Defendant's first objection is **OVERRULED**.

**B.     Objection 2**

Defendant next objects to Judge Shirley's reliance on Sergeant Chadwell's testimony that Sergeant Chadwell could easily find Defendant's residence because Sergeant Chadwell relied on his personal knowledge of the area, rather than the directions provided by Agent Moore, and thus Sergeant Chadwell's testimony was irrelevant as to whether the directions provided by Agent Moore were erroneous. It does not appear that Sergeant Chadwell was involved in the execution of the search warrant, and given that Sergeant Chadwell went to Defendant's residence approximately a month prior to the execution of the search warrant, it is doubtful that Sergeant Chadwell relied on the directions included with the search warrant to find Defendant's house. Accordingly, Defendant's second objection is **SUSTAINED**, and, for the purposes of determining the validity of the search warrant, the Court will not consider Sergeant Chadwell's testimony regarding his ease in finding the premises.

### C.     Objection 3

Defendant next objects to Judge Shirley's finding that Mr. Shayne Cooper is a licensed private investigator.  Defendant points out that Mr. Cooper is not a licensed private investigator.  Defendant's third objection is **SUSTAINED** and the record is hereby corrected to show that Mr. Cooper is not a licensed private investigator.

### D.     Objections 4 and 5

Defendant next objects to Judge Shirley's summary of the law established in *Franks v. Delaware*, 438 U.S. 154 (1978).  Defendant contends that Judge Shirley incorrectly stated the law.   In his report and recommendation Judge Shirley summarized *Franks* in the following manner: "If, however, a defendant can make a preliminary showing that the affidavit contains a misrepresentation of material fact, or any intentional misrepresentation, or a material omission, then an attack on the veracity of the allegations contained in the affidavit may be permitted under *Franks*." [Doc. 94 at p. 7].   Judge Shirley, in making his ruling, found that Defendant had "failed to make a preliminary showing that the affidavit contains a misrepresentation of material fact, or any internal misrepresentation, or a material omission." [*Id*. at pp. 18-19].

Defendant contends that Judge Shirley erred by not including in his summary of law that a defendant is entitled to a *Franks* hearing if there is a showing of an omission or misrepresentation made with reckless disregard for the truth.  The Court notes that Judge Shirley's report and recommendation also contained the following statement of the law under *Franks*:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with a reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

[*Id.* at p. 11]. From this accurate statement of the law in the body of Judge Shirley's ruling, it is clear that Judge Shirley was aware that an omission or misrepresentation made with a reckless disregard for the truth was also grounds for a *Franks* hearing. The Court finds that Judge Shirley was aware of the proper legal standard to apply when ruling on the *Franks* motion. The Court further finds that while Judge Shirley's summary of the law on pages 7 and 18 through 19 did not specifically mention omissions or misrepresentations made with a reckless disregard for the truth, it is clear that "any internal misrepresentation, or a material omission" would include an omission or misrepresentation made with a reckless disregard for the truth. Accordingly, Defendant's fourth and fifth objections are **OVERRULED**.

### E.    <u>Objection 6</u>

Defendant objects to Judge Shirley's characterization of the events surrounding Defendant's expungement as "irregular." Given this Court's finding that the expungement occurred in contravention of Tennessee law, the Court does not take issue with Judge Shirley's characterization. Defendant's sixth objection is **OVERRULED**.

### F.    <u>Objection 7</u>

Defendant next objects to Judge Shirley's statement that Defendant's counsel declined to admit or deny Defendant was a convicted felon. Defendant contends that the existence of

a prior felony conviction is an essential element of the government's case and that it is up to the government to prove that conviction, not otherwise. Defendant is correct; he is under no obligation to incriminate himself. However, while Defendant has no obligation to incriminate himself, or to present any evidence whatsoever, nor is Defendant precluded from offering evidence of innocence. This Court ruled above that Defendant's alleged expungement was void as to case number 9768. If Defendant is aware of further facts that would suggest otherwise, then it would behoove Defendant to present that evidence to the Court, but, again, Defendant is certainly under no obligation to do so. The Court has also already ruled that the government will have to prove the existence of Defendant's conviction at trial. Accordingly, Defendant's seventh objection is **OVERRULED**.

### G.    Objection 8

Defendant next objects to Judge Shirley's finding that Defendant was convicted of a felony. The Court has already ruled that the government will have to prove the existence of Defendant's conviction at trial, that the expungement was void, and that, in light of the transcripts of the proceedings in case number 9768, the current absence of minute entries in that case is of no legal consequence. Accordingly, Defendant's objection is **OVERRULED**.

### H.    Objection 9

Defendant next objects to Judge Shirley's finding that the 1998 order of expungement was signed by an unidentified district attorney. Defendant's objection is **SUSTAINED** and the record is corrected to show that the 1998 order of expungement was signed by district attorney Shayne Sexton.

## I.    Objections 10 and 11

Defendant next objects to Judge Shirley's determination that a felony conviction cannot be expunged under Tennessee law and that the expungement order had no impact on the instant case. Defendant contends that he received an expungement and, therefore, is not a convicted felon under 18 U.S.C. § 921(a)(20). This Court ruled above that Tennessee law does not allow an expungement of a felony conviction. The Court further ruled that the expungement order was void as to case number 9768 and that Defendant never legally had his rights restored, because the order was issued outside the court's jurisdiction. As Defendant never legally had his rights restored, despite any error on the part of Tennessee agencies in allowing Defendant to exercise some of those rights, 18 U.S.C. § 921(a)(20) does not apply and Defendant's objections are **OVERRULED**.

## J.    Objection 12

Defendant next objects to Judge Shirley's summary of Defendant's arguments regarding the expungement and unexpungement. Defendant's arguments speak for themselves, and Judge Shirley's summarization of those arguments, while not a verbatim recitation of every argument and theory Defendant has presented, was sufficient. The Court is aware of all of the arguments Defendant has made and Judge Shirley's succinct summary has in no way prejudiced Defendant's case. Defendant's objection is **OVERRULED**.

## K.    Objection 13

Defendant next objects to Judge Shirley's finding that Lee Asbury signed the order of unexpungement in his capacity as counsel for Defendant. As the Court noted above, the

Court need not go into the validity of the unexpungement because the order of expungement was void *ab initio*, and therefore had no legal effect whatsoever with respect to case number 9768. Accordingly, Defendant's objection is **OVERRULED**.

### L. Objection 14

Defendant next objects to Judge Shirley's second footnote concerning the 2004 unexpungement order. Again, the Court has already ruled that the unexpungement order is irrelevant to these proceedings, because the original expungement order was void and of no legal effect as to case number 9768. Accordingly, Defendant's objection is **OVERRULED**.

### M. Objection 15

Defendant next objects to Judge Shirley's determination that Defendant's 1987 felony conviction in case number 9768 was never overturned. As the Court noted above, for the purposes of determining the validity of the expungement, all of the evidence points to the fact that defendant entered a guilty plea, was sentenced to probation, and served his term of probation. There is also evidence that the expungement order originally referenced case number 9769, but was modified by a third party to reference case number 9768. In light of the Court's rulings above, Defendant's fifteenth objection is **OVERRULED**.

### N. Objection 16

Defendant next objects to Judge Shirley's finding that there has been no contention that the conviction in case number 9768 was overturned or otherwise disposed of in a manner which would allow an expungement. The Court has already ruled on this issue above, finding, for the purposes of the expungement issue, that the conviction was never overturned

or otherwise disposed of in a manner that would allow expungement, and the Court notes that Defendant has never affirmatively stated otherwise. Again, the Court recognizes that the government must prove the existence of the conviction at trial, and Defendant is under no obligation to incriminate himself, but until such time as there is some shred of proof, even in the way of a proffer, that the conviction was disposed of in some expungeable manner, rather than the statement that the case might have been handled in such a manner, then the Court's ruling that the expungement was void as to case number 9768 shall stand. Defendant's objection is **OVERRULED**.

### O.    <u>Objection 17</u>

Defendant next objects to Judge Shirley's reference to the motion for unexpungement and related documents because those documents were not properly before Judge Shirley. Given this Court's ruling that the unexpungement order is irrelevant, because the underlying expungement order was void *ab initio* with respect to case number 9768, Defendant's objection is **OVERRULED**. Additionally, the Court notes that the documents in question were entered into evidence before this Court by Defendant [Defendant's Collective Exhibit One], so even if Judge Shirley did err, there has been no prejudice to Defendant.

### P.    <u>Objections 18 through 20</u>

Defendant next objects to Judge Shirley's finding that had Judge Guyton been made aware of the circumstances of the expungement in case number 9768, he would have found that the expungement was invalid, that the conviction was valid, and still allowed the search. In ruling on the expungement and minute entry issues above, the Court has also resolved

these objections. The Court agrees with Judge Shirley's determinations and Defendant's eighteenth, nineteenth, and twentieth objections are **OVERRULED**.

**Q.     Objection 21**

Defendant next objects to Judge Shirley's finding that Defendant failed to make a preliminary showing under Franks that the statement that Defendant "is a convicted felon" in the search warrant affidavit was false. Defendant also contends that the government conceded that Defendant had "successfully [obtained] an order expunging [case number 9768]." Again, the Court has found that the expungement was void as to case number 9768, and Judge Shirley's determination is in keeping with this Court's ruling and, thus, was not erroneous. The government's statement that Defendant was successful in obtaining an order purporting to expunge case number 9768 is true; Defendant did receive such an order. However, as noted above, that order exceeded the authority of the court and had no legal effect as to case number 9768. Had Judge Guyton been informed of the expungement, he would have reached a similar conclusion and would have authorized the search. Defendant's objection is **OVERRULED**.

**R.     Objection 22**

Defendant next objects to Judge Shirley's statement of the law with regard to omissions under *Franks*. Defendant contends that Judge Shirley erred by failing to state that "*Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." Judge Shirley's recitation of the law indicated that "[t]he Sixth Circuit has found the *Franks* Doctrine applies to omissions

38

of information from affidavits as well as affirmative misrepresentations of fact." [Doc. 94 at p. 15]. It is clear from Judge Shirley's summary of the law that he recognized that *Franks* applies to omissions of information, which would cover omissions designed to mislead and omissions made with a reckless disregard the truth. Accordingly, Judge Shirley's summary of the law was not erroneous.

Defendant also contends that Judge Shirley erred by failing to include Defendant's citation to LaFave.[12] It is clear that Judge Shirley was aware of the law under *Franks*, and while Judge Shirley may not have cited to LaFave, the Court does not find that oversight to be an error. Taking the quotation from LaFave into consideration, this Court finds that Defendant was not entitled to a *Franks* hearing because the omissions were not so striking that there was a compelling inference that the omission was critical to the determination of probable cause. Accordingly, Defendant's objection is **OVERRULED**.

## S.     Objection 23

Defendant next objects Judge Shirley's omission of the fact that Agent Moore knew that Defendant's felony conviction had been expunged. In light of this Court's ruling on the expungement, the Court finds that any information regarding the void expungement would not have altered Judge Guyton's decision to authorize the search. Accordingly, Judge Shirley did not err and Defendant's objection is **OVERRULED**.

---

[12]LaFave indicates that a defendant is entitled to a *Franks* hearing when "the omitted facts 'are so striking' there is a compelling inference that the omission is 'critical' to the determination of probable cause." Wayne R. LaFave, Search and Seizure § 4.4(b) at p. 546 (4th ed. 2004)

### T.    Objection 24

Defendant next objects to Judge Shirley's statement that "the [c]ourt agrees that there was never an expungement of [Defendant's] criminal conviction." [Doc. 94 at p. 16]. Given that the Court has found that the expungement was void and of no legal effect s to case number 9768, Judge Shirley's statement was not in error. Defendant's objection is **OVERRULED**.

### U.    Objection 25

Defendant next again objects to Judge Shirley's finding that Tennessee law does not allow for the expungement of an adult felony conviction. Given the Court's finding that Tennessee law allows an expungement under only limited circumstances, and given the finding that the expungement was void as to case number 9768, Judge Shirley did not err and the objection is **OVERRULED**.

### V.    Objection 26

Defendant next objects to Judge Shirley's finding that the 2004 unexpungement order corrected any error in the expungement order. As noted previously, the Court need not reach the issue of the 2004 unexpungement order because the expungement order was void as to case number 9768 and of no legal effect. Defendant's objection is **OVERRULED**.

### W.    Objections 27 and 28

Defendant next objects to Judge Shirley's finding that Agent Moore did not make a material omission of a true fact by failing to inform Judge Guyton of the expungement and that even if it were an improper omission, it  was not material. As already noted above, the

Court has ruled that expungement was void, and thus any reference to the expungement would not have affected Judge Guyton's determination. Judge Shirley did not err and Defendant's objections are **OVERRULED**.

### X.     Objection 29

Defendant next objects because Judge Shirley stated that defense counsel had informed him that there were two houses on the premises in question, but failed to mention that the aerial photographs revealed the presence of the two houses. Given that Judge Shirley found that there were two houses, which appears to be the case, the fact that Judge Shirley did not mention every piece of evidence which showed the existence of the houses was not error. Defendant's objection is **OVERRULED**.

### Y.     Objections 30 through 32

Defendant next objects to Judge Shirley's failing to acknowledge Defendant's proffer regarding the fact that a tenant had lived at the second house on the property, but was in the process of moving out, Judge Shirley's implication that Defendant had waived the issue, and Judge Shirley's finding that Defendant had failed to make a preliminary showing of a false statement with regard to the description of the property. Having examined the record, including Defendant's proffer, the Court finds that Judge Shirley did not err, as the proffer would not have altered Judge Shirley's ruling.

Judge Shirley found that Defendant failed to make a substantial showing that the following statement in the affidavit was false: "[Defendant] is the only permanent, full-time resident of the Premises. The Premises is completely fenced-in and the entrance gate is

usually locked." Given that Defendant conceded that the tenant was in the process of moving out at the time of execution, it is clear that the tenant was not a permanent, full-time resident, so the statement was not false. Additionally, the Court notes that defense counsel conceded that 185 Cattle Drive is on Parcel 16.01. [Doc. 116 at p. 32]. In contrast, the second home, the rental home, located at 5818 Hopewell Road, is located on parcel 23.03. The affidavit in support of the search warrant does not include parcel 23.03, nor the rental home, as an area to be searched, and it does not appear that any items were seized from that property. Given all of the above, the Court can find no error with Judge Shirley's ruling and Defendant's objection is **OVERRULED**.

Z.     <u>Objections 33, 34, 36, and 37</u>[13]

Defendant next objects to Judge Shirley's interpretation of Exhibit 8 to the February 26, 2007, hearing, an aerial photograph of the premises in question and Judge Shirley's ultimate finding that the events of August 31, 2006, occurred on Parcel 16.01. Defendant contends that there is no way to determine what portion of the photograph is Parcel 23.03 and what portion is Parcel 16.01, that the gate the police officers saw Defendant standing near on August 31, 2006, is not visible from the photograph, and Judge Shirley's finding that the gate in question appears to be located either on the boundary between the two parcels or fully on Parcel 16.01.

---

[13]The Court notes that there is no Objection 35, as Defendant's brief skips over number 35. [*See* Doc. 108 at p. 68].

Having reviewed the photographs, as well as the record as a whole, the Court does not find Judge Shirley's findings to be in error. Certainly, it is true that the aerial photo in no way indicates the actual boundary lines in question. However, the photograph, combined with the Defendant's Exhibit 1A, as well as the testimony of Ms. Sandifer and Sergeant Chadwell, all taken together, support Judge Shirley's determination that the events of August 31, 2006, occurred on Parcel 16.01, which was identified in the search warrant as 185 Cattle Drive. As the Court finds no error with Judge Shirley's findings, Defendant's objections are **OVERRULED**.

### AA.    <u>Objection 38</u>

Defendant next objects to Judge Shirley's determination that the driveway running from the public road to Defendant's home is 185 Cattle Drive. Defendant contends that the driveway in question was actually Cattle Drive, not 185 Cattle Drive. During the February 1, 2007, hearing, Ms. Sandifer testified that Parcel 16.01 is 185 Cattle Drive. [Doc. 69 at p. 51]. Ms. Sandifer later testified that she did not know whether the driveway in question was Cattle Drive. [*Id*. at 54]. It is clear from the record, though, that the road in question passes through Parcel 23.03 and Parcel 16.01 and connects to Defendant's house and is effectively Defendant's driveway.

The search warrant establishes that the police encountered Defendant on August 31, 2006, at the gated entrance to the Premises. [Government's Exhibit Two to the February 1, 2007 hearing]. Based on all of the evidence of record, the Court finds that the statement is not false, nor is there any evidence that an omission was made with the intent to mislead, or

with a reckless disregard of whether the statement would mislead, Judge Guyton. The road in question is the driveway leading to Defendant's house and is, in effect, the entrance to Defendant's house. The search warrant only sought to search Defendant's property, and given that the warrant identified Defendant's house as 185 Cattle Drive, while the second house, the rental house, was located at 5818 Hopewell Road, which was in no way included in the search warrant, it is clear that there was little to no chance that the wrong premises would be searched and that Agent Moore was not attempting to mislead Judge Guyton. Defendant's objection is **OVERRULED**.

## BB. <u>Objection 39</u>

Defendant next objects to Judge Shirley's finding that Defendant failed to show that the events of August 31, 2006, occurred at anyplace other than 185 Cattle Drive. For the reasons stated above, the Court again finds that Judge Shirley did not err and Defendant's objection is **OVERRULED**.

## CC. <u>Objection 40</u>

Defendant next objects to Judge Shirley's finding that Defendant failed to make a preliminary showing under *Franks*. Specifically, Defendant again objects to Judge Shirley's failure to include a reference to reckless misrepresentations and omissions. For the reasons stated in section IV(D) above, the Court finds that Judge Shirley knew that *Franks* also applies to reckless misrepresentations and omissions and applied the proper legal standard. Accordingly, Defendant's objection is **OVERRULED**.

### DD. <u>Objection 41</u>

Defendant next objects to Judge Shirley's finding that Defendant failed to make a preliminary showing under *Franks*, arguing that the ruling is clearly contradictory to the record. Defendant again argues that Agent Moore's failure to inform Judge Guyton of the expungement invalidated the search warrant. For the reasons noted above, the Court again finds that Judge Guyton's decision would not have been altered had he been informed of the invalid expungement. Judge Shirley did not err and Defendant's objection is **OVERRULED**.

### EE. <u>Objection 42</u>

Defendant next objects to Judge Shirley's mis-characterization of Defendant's argument in its motion to reconsider the denial of a *Franks* hearing. Judge Shirley characterized defendant's argument as centering on the omission of the NCIC check, while Defendant contends that his argument also included reference to the government's alleged concession that Defendant had "successfully [obtained] an order expunging [case number 9768]." As noted above, the expungement order was void and of no legal effect as to case number 9768. Judge Shirley's ruling is not in error and Defendant's objection is **OVERRULED**.

### FF. <u>Objection 43</u>

Defendant next objects to Judge Shirley's finding that Defendant's motion to reconsider was untimely. It is clear that Judge Shirley did review the additional filings provided by Defendant, so Judge Shirley did reconsider Defendant's motion and still chose

to deny the requested *Franks* hearing. After a *de novo* review of the record, for all of the reasons already stated, the Court does not find Judge Shirley's decision to deny a *Franks* hearing to have been in error and Defendant's objection is **OVERRULED**.

**GG.** **Objection 44**

Defendant next objects to Judge Shirley's finding that Defendant had posited no motive for Defendant's son, Richard Darryl Bailey, Jr., to lie when he provided information to Agent Moore concerning Defendant. Defendant contends that the record shows that defense counsel proffered that Mr. Bailey, Jr. stood to inherit Defendant's multi-million dollar farm, but Judge Shirley failed to include that proffer in his findings. The Court has considered Defendant's proffer, as well as the rest of the record, and finds no error with Judge Shirley's ultimate determination to find Mr. Bailey, Jr. credible.

It is clear from the record that Defendant and Mr. Bailey, Jr. are estranged, and that fact was noted in the search warrant affidavit. However, there is no evidence of record that Mr. Bailey, Jr. would automatically inherit Defendant's farm should Defendant be placed in jail. In fact, Ms. Brooks testified during the May 17, 2007, hearing that she occasionally stayed at Defendant's home during his recent detention, because Defendant was not there. [Doc. 150 at p. 93]. This statement would belie any inference that Mr. Bailey, Jr. would obtain an immediate possessory interest in Defendant's farm should Defendant be incarcerated. The Court recognizes that Defendant has posited a possible motive for Mr. Bailey, Jr.'s untruthfulness, but does not find that motive sufficient to render the information provided by Mr. Bailey, Jr. unreliable. Accordingly, to the extent that Judge Shirley erred

46

in failing to recognize that Defendant had raised a possible ulterior motive for Mr. Bailey, Jr., the objection is **SUSTAINED**. To the extent that the Court finds that Judge Shirley did not err in his final determination to find Mr. Bailey, Jr. credible, the objection is **OVERRULED**.

### HH. Objections 45 and 46

Defendant next objects to Judge Shirley's determination that Mr. Bailey, Jr. was unwilling to protect Defendant's continuing illegal activity and further objects to Judge Shirley's determination that this willingness to acknowledge Defendant's criminal activity made Mr. Bailey, Jr. more credible, rather than less credible. Defendant contends that there is no evidence to support Judge Shirley's finding that Mr. Bailey, Jr. was unwilling to protect his father. Defendant further contends that Mr. Bailey, Jr. had a clear motive to lie and that the affidavit did not present sufficient facts so that Judge Guyton could fully examine Mr. Bailey, Jr.'s motives.

After examining the record as a whole, the Court finds that Judge Shirley did not err. The affidavit clearly establishes that Mr. Bailey, Jr. did not wish to protect his father [Government's Exhibit Two to the February, 26, 2007, hearing], and under the circumstances, the Court finds that it was reasonable for Judge Shirley to interpret that to mean that Mr. Bailey, Jr. did not wish to protect Defendant from the criminal activity discussed in the search warrant affidavit. As Judge Shirley notes in his report and recommendation, the fact that Mr. Bailey, Jr. is estranged from Defendant is not enough to render him unreliable. Further, had Mr. Bailey, Jr. lied to Agent Moore he could face

potential criminal charges. The Court finds no error in Judge Shirley's credibility determination and Defendant's objections are **OVERRULED**.

## II.     Objections 47 through 49

Defendant next objects to Judge Shirley's reliance on *United States v. Cooper*, 1 Fed. Appx. 399, 405 (6th Cir. 2001). Defendant contends that *Cooper* is distinguishable because Judge Guyton could only rely on the affidavit to determine the extent of Mr. Bailey, Jr.'s knowledge, and the affidavit only provided minimal facts as to Mr. Bailey, Jr.'s knowledge of Defendant's alleged illegal activity, while the informant in *Cooper* provided far more information. Defendant also objects to Judge Shirley's determination that any question raised by Mr. Bailey, Jr's anger toward Defendant was outweighed by other factors in favor of his credibility and his finding that the information provided by Mr. Bailey, Jr. was detailed.

The affidavit established that Mr. Bailey, Jr. told Agent Moore that Defendant

> is armed at all times and keeps numerous firearms on the premises. Specifically, [Mr. Bailey, Jr.] told [Agent Moore] [Defendant's] favorite firearm is a .38 caliber, Smith & Wesson, "Airweight" model revolver, of which he owns many, and stores them somewhere on the Premises in a blue food and beverage cooler.

[Government's Exhibit Two to the February, 26, 2007, hearing at ¶ 4]. The Court finds that the affidavit contains a level of information sufficient to bolster Mr. Bailey, Jr.'s credibility and that the facts were sufficient to allow a favorable comparison to *Cooper*. Based upon the statement in the affidavit, it is clear that Mr. Bailey, Jr. did have specific knowledge as

to Defendant's habit of staying armed at all times, his habit of keeping numerous firearms, that Defendant appeared to prefer a .38 caliber, Smith & Wesson, Airweight model revolver, and that Defendant liked to store weapons in a cooler.[14]  All of these facts, taken in conjunction with the family relationship between Defendant and Mr. Bailey, Jr. allow the Court to draw support from the *Cooper* analysis and supports Judge Shirley's overall finding as to Mr. Bailey, Jr.'s credibility.   The Court also notes Judge Shirley's citation to *Massachusetts v. Upton*, 466 U.S. 727 (1984) and finds that *Upton* further supports Judge Shirley's findings.  Defendant's objections are **OVERRULED**.

### JJ.    Objection 50

Defendant next objects to Judge Shirley's finding that Mr. Bailey, Jr. had access to Defendant's home and ample opportunity to observe Defendant's guns.  Defendant contends that Mr. Bailey, Jr. had not been to the house in eight months and so had no recent access to the home nor opportunity to observe guns.

The affidavit establishes that Mr. Bailey, Jr. had not been to the home in eight months, and also establishes that the time when Mr. Bailey, Jr. had frequented Defendant's home was prior to the period of estrangement.   Accordingly, Judge Guyton had the opportunity to determine when Mr. Bailey, Jr.'s observations had been made.  Additionally, the Court notes that Mr. Bailey, Jr.'s observations that Defendant possessed guns was corroborated by the

---

[14]The fact that the cooler was not recovered is of little import, because the Court must examine the affidavit based upon the knowledge Judge Guyton possessed at the time, not based upon the results of the search.

events of August 31, 2006,[15] which were also spelled out in the affidavit. Accordingly, the Court finds no error with Judge Shirley's findings and Defendant's objection is **OVERRULED**.

### KK. Objection 51

Defendant next objects to Judge Shirley's finding that the fact that Mr. Bailey, Jr. purchased guns for Defendant in the past bolstered Mr. Bailey, Jr.'s credibility. Defendant contends that Mr. Bailey, Jr. could not have known that Defendant could not possess fire arms because of Defendant's expungement, thus Mr. Bailey, Jr. could not have known he was potentially admitting to having committed a crime.

The Court agrees that there is some question as to whether Mr. Bailey, Jr. knew it was a crime to purchase guns for Defendant. Had Mr. Bailey, Jr. purchased guns for Defendant during the period between Defendant's alleged conviction and the purported expungement of that conviction, that would clearly have been a crime. However, the affidavit does not indicate when Mr. Bailey, Jr. purchased guns for Defendant. Even if Mr. Bailey, Jr.'s statements cannot be taken as admissions of guilt, they still show that Mr. Bailey, Jr. had detailed knowledge of Defendant's past habits and gun possession, information which was corroborated by the evidence of Defendant's possession of a gun on August 31, 2006. Accordingly, the court finds that the fact that Mr. Bailey, Jr. purchased guns for Defendant

---

[15]The Court notes that Defendant has objected to Judge Shirley's finding that Mr. Bailey, Jr.'s testimony of Defendant's gun possession corroborates, and is corroborated by, the events of August 31, 2006. The Court addresses that objection below.

still enhances Mr. Bailey, Jr.'s credibility, though not necessarily by showing that Mr. Bailey, Jr. was admitting to the commission of a crime. Accordingly, Defendant's objection is **OVERRULED**.

### LL.    Objection 52

Defendant next objects to Judge Shirley's ultimate determination that Mr. Bailey, Jr. was a credible informant. For the reasons discussed above, the Court finds that Judge Shirley did not err in finding Mr. Bailey, Jr. to be credible. Accordingly, Defendant's objection is **OVERRULED**.

### MM.  Objection 53

Defendant next objects to Judge Shirley's determination that Mr. Bailey, Jr.'s testimony of Defendant's gun possession corroborates, and is corroborated by, the events of August 31, 2006. Defendant contends that both events are too stale and cannot corroborate each other. The Court notes that the Sixth Circuit has held that evidence that is several months old can serve as a reliable basis for a search warrant. *United States v. Word*, 806 F.2d 658, 662 (6th Cir. 1986). In the instant case, it is clear from the affidavit that Mr. Bailey, Jr. possessed a long term familiarity with Defendant's possession of guns, and while there was an eight month gap in Mr. Bailey, Jr.'s knowledge, the Court is guided by the fact that other courts have found that firearms can be items of "enduring utility" and thus are likely to be retained for an extended period of time. *See United States v. Sharkey*, No. 03-6104, 2004 U.S. App. LEXIS 24214, at *13-14 (6th Cir. Nov. 18, 2004) (approving a magistrate judge's determination that a firearm was an item of enduring utility); *United States v. Pope*, 330 F.

Supp. 2d 948, 956 (M.D. Tenn. 2004) (holding that a firearm is of enduring utility and that an informant's information was not stale after six weeks when the informant had observed the defendant with a gun over the course of several months).

Given that Mr. Bailey, Jr. had an extended knowledge of Defendant's firearm possession, and given that Defendant, by his own admission, shot at a vehicle on August 31, 2006, and was observed to be in the possession of a firearm by police, the Court finds that, under the totality of the circumstances, the affidavit is valid and that the two sources of evidence can serve to corroborate each other. Defendant's objection is **OVERRULED**.

### NN. <u>Objection 54</u>

Defendant next objects to Judge Shirley's determination that Mr. Bailey, Jr.'s reliability is enhanced because Mr. Bailey, Jr. is a citizen informant and not engaged in the criminal milieu. Defendant contends that such a finding contradicts Judge Shirley's earlier finding that Mr. Bailey, Jr. had potentially committed a crime by purchasing guns for Defendant. Defendant further argues that Judge Shirley's wholesale acceptance of the information provided by Mr. Bailey, Jr. was not warranted under Sixth Circuit law.

The Court held above that it was unclear whether Mr. Bailey, Jr. knew that he was potentially committing a crime when he purchased guns for Defendant. Furthermore, the affidavit indicates that Mr. Bailey, Jr. had only a limited criminal record. In light of these facts, the Court finds that Judge Shirley did not err in his determination that Mr. Bailey, Jr. was not engaged in the criminal milieu. Additionally, while it is true that the Sixth Circuit has held that "information supplied by an informant of proven reliability may be sufficient,

standing alone, to demonstrate probable cause," *United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999), the Court notes that Mr. Bailey, Jr.'s information was not "standing alone," so the issue of his proven reliability is mitigated. As the Court noted above, Mr. Bailey, Jr.'s information was corroborated by law enforcement testimony concerning the events of August 31, 2006. Accordingly, the Court finds that Judge Shirley did not err and Defendant's objection is **OVERRULED**.

### OO. Objections 55 and 56

Defendant next objects to Judge Shirley's finding that Agent Moore testified that he independently confirmed that defendant was a convicted felon. Defendant contends that Agent Moore did not testify, and also argues that Agent Moore could not have confirmed Defendant had a felony conviction, because that conviction was expunged. Defendant further objects to Judge Shirley's finding that the information provided by Mr. Bailey, Jr. was corroborated by Agent Moore's independent investigation because the record fails to show any indication that Agent Moore corroborated anything.

The Court notes that Agent Moore provided the government with an affidavit which establishes some of the details of Agent Moore's investigation into Defendant's case. [Doc. 77, Attachment 2]. The affidavit clearly establishes that Agent Moore confirmed Defendant resided at Cattle Drive. Additionally, Sergeant Chadwell testified that, sometime between August 31, 2006, and the execution of the search warrant, he spoke with Agent Moore concerning the events of August 31, 2006, and informed Agent Moore of the gun in

Defendant's possession. [Doc. 116 at p. 164-65]. These facts confirm that Agent Moore performed an investigation in relation to Defendant's case.

As far as an investigation into Defendant's alleged conviction, the affidavit in support of the search warrant states that in April, 1987, Defendant was convicted of Possession of a Schedule III Controlled Substance in the Circuit Court of Claiborne County. [Government's Exhibit Two to the February, 26, 2007, hearing at ¶ 2]. The Court notes that the facts concerning Defendant's alleged conviction match the facts established in the copy of the judgment of conviction. [Government's Exhibit One]. It is clear from Agent Moore's specific knowledge of the crime of which Defendant was allegedly convicted in 1987 that he must have investigated whether Defendant was a convicted felon. The Court has already ruled that the affidavit was not invalidated by Agent Moore's failure to inform Judge Guyton of Defendant's expungement. Based upon the record as a whole, the Court finds that Judge Shirley did not err in ruling that Agent Moore corroborated Mr. Bailey, Jr.'s information and that Agent Moore investigated Defendant's criminal history. It is true that Agent Moore did not actually testify to these facts, but there is sufficient proof of record to establish that an investigation was made. Defendant's objections are **OVERRULED**.

## PP.   <u>Objections 57 and 58</u>

Defendant next objects to Judge Shirley's reliance on the information provided by Mr. Bailey, Jr. to establish that Defendant was engaged in ongoing criminal activity and that Defendant's act of being a felon in possession was of a continuing nature. The Court has already ruled that the information provided by Mr. Bailey, Jr. was reliable and had been

54

corroborated. Given Mr. Bailey, Jr.'s information that Defendant had been in possession of guns some eight months earlier, and given the information provided by law enforcement concerning the events of August 31, 2006, the Court finds that there was sufficient evidence to support a finding that Defendant was engaged in ongoing criminal conduct and that Defendant's act of being a felon in possession was an ongoing crime. Accordingly, Judge Shirley did not err and Defendant's objections are **OVERRULED**.

## QQ. <u>Objection 59</u>

Defendant next objects to Judge Shirley's finding that Sergeant Chadwell observed Defendant at the driveway entrance to 185 Cattle Drive. Defendant contends that Defendant was standing on the north side of the gate, which is not necessarily 185 Cattle Drive. The Court has already ruled that Judge Shirley did not err in finding that the events of August 31, 2006, occurred at 185 Cattle Drive. Accordingly, Defendant's objection is **OVERRULED**.

## RR. <u>Objections 60 and 61</u>

Defendant next objects to Judge Shirley's analysis, and ultimate finding, of the nomadic versus entrenched factor under *United States v. Spikes*, 158 F.3d 913 (6th Cir. 1998). Defendant contends that Judge Shirley should have examined whether Defendant was nomadic or entrenched with respect to the area where law enforcement observed Defendant on August 31, 2006. The Court has already ruled that the events of August 31, 2006, occurred at 185 Cattle Drive and that law enforcement observed Defendant at what was effectively the entrance to his home. In light of that ruling, it is clear that Judge Shirley

properly found that Defendant was entrenched at his home. Defendant's objections are **OVERRULED**.

### SS. <u>Objection 62</u>

Defendant next objects to Judge Shirley's reliance on *United States v. Pritchett*, 40 Fed. Appx. 901 (6th Cir. 2002) and *United States v. Smith*, 182 F.3d 473, 480 (6th Cir. 1999) in support of his finding that firearms are durable goods. The Court again notes that Mr. Bailey, Jr.'s information provided that Defendant had a history of firearms possession. That information was corroborated, and made more current, by the information provided by law enforcement regarding the events of August 31, 2006. Additionally, given Mr. Bailey, Jr.'s indication that Defendant was constantly armed and had numerous guns on the Premises, it was appropriate to find that Defendant's guns should be considered durable goods. In addition, the Court cited above to additional case law supporting the contention that a gun can be considered of enduring utility. *See United States v. Sharkey*, No. 03-6104, 2004 U.S. App. LEXIS 24214, at *13-14 (6th Cir. Nov. 18, 2004) (approving a magistrate judge's determination that a firearm was an item of enduring utility); *United States v. Pope*, 330 F. Supp. 2d 948, 956 (M.D. Tenn. 2004) (holding that a firearm is of enduring utility and that an informant's information was not stale after six weeks when the informant had observed the defendant with a gun over the course of several months).

Nor does such a holding contradict Congress's finding that firearms can easily move through interstate commerce. Firearms are commonly manufactured in one state, then purchased in a different state. However, common sense would dictate that once an individual

buys a firearm, especially a firearm to be kept in one's home, such as for self-defense, that the firearm transforms from an item that once moved easily through interstate commerce into one of enduring utility, effectively becoming a durable good. The Court sees no error in Judge Shirley's determination and Defendant's objection is **OVERRULED**.

**TT.**   <u>Objection 63</u>

Defendant next objects to Judge Shirley's reliance on the events of August 31, 2006, to support the probable cause determination. Defendant contends that Judge Guyton was not aware of those facts and, thus, were irrelevant. The Court notes that the affidavit in support of the search warrant establishes the following:

> On August 31, 2006, at approximately 1:47 a.m., Claiborne County, Tennessee Sheriff's Deputies were dispatched to 185 Cattle Drive . . . on a shots fired call to Claiborne County 911 . . . . Upon arrival on the scene, Deputies Josh Russell and Robert Chadwell spoke with [Defendant] regarding someone possibly shooting at cattle on his farm. . . . During this conversation, [Defendant] spoke with the Deputies from inside a metal livestock gate at the entrance to the Premises holding a bolt action rifle. Deputy Russell asked [Defendant] if the rifle was a .220 Swift, and [Defendant] replied that it was a .220 Swift.

Thus, while the affidavit did not establish that Defendant had, himself, fired a gun, the affidavit did clearly establish that Defendant was observed in possession of a gun. Accordingly, Judge Shirley's ultimate finding that probable cause supported the search warrant was not in error and Defendant's objection is **OVERRULED**.

## UU.  Objection 64

Defendant next objects to Judge Shirley's analysis of the forum of convenience factor under *Spikes*.  Defendant contends that Defendant was standing on Parcel 023.03 when observed by law enforcement on August 31, 2006, thus 185 Cattle Drive could not be a forum of convenience.  The Court has already ruled that the events of August 31, 2006, occurred at 185 Cattle Drive.  Accordingly, Defendant's objection is **OVERRULED**.

## VV.  Objection 65

Defendant next objects to Judge Shirley's determination that Mr. Bailey, Jr.'s information established that Defendant stored firearms on the premises and that law enforcement observed Defendant with a firearm on the premises.  Defendant again contends that Mr. Bailey, Jr.'s information was unreliable and that the deputies observed Defendant on Parcel 023.03.  The Court has already ruled that the information provided by Mr. Bailey, Jr. was reliable and that the events of August 31, 2006, occurred at 185 Cattle Drive. Accordingly, Defendant's objection is **OVERRULED**.

## WW.  Objection 66

Defendant next objects to Judge Shirley's finding that 185 Cattle Drive was a secure operational base for the offense of felon in possession of a firearm.  The Court has already ruled that the events of August 31, 2006, occurred at 185 Cattle Drive.  Therefore, the information provided by law enforcement, coupled with the information provided by Mr. Bailey, Jr., clearly supports Judge Shirley's finding that 185 Cattle Drive was a secure operational base for Defendant's criminal activity. Defendant's objection is **OVERRULED**.

### XX.  **Objection 67**

Defendant next objects to Judge Shirley's ultimate finding that, under *Spikes*, the information provided by Mr. Bailey, Jr. concerning Defendant's firearms was not stale. Given that each of Defendant's objections to Judge Shirley's *Spikes* analysis and determination has been overruled, and given that the Court finds that Judge Shirley did not err in his ultimate conclusion that the information provided by Mr. Bailey, Jr. was not stale, Defendant's objection is **OVERRULED**.

### YY.  **Objection 68**

Defendant next objects to Judge Shirley's finding that the information provided by Mr. Bailey, Jr. and by the Claiborne County deputy was not stale. For the reasons noted above in respect to each of Defendant's prior *Spikes*' objections, the Court finds that the information provided by Mr. Bailey, Jr. and by the Claiborne County deputy was not stale and that Judge Shirley did not err in his decision. Defendant's objection is **OVERRULED**.

### ZZ.  **Objection 69**

Defendant next objects to Judge Shirley's finding that there is no case law to support the position that a thirty day period is sufficient to render information stale. Defendant contends that the passage of time is not dispositive and that the thirty day time period is irrelevant. The Court has ruled that the information provided by Mr. Bailey, Jr. And law enforcement was not stale. In addition, Judge Shirley's statement is pertinent because if there were case law which held that a thirty day period resulted in *per se* staleness, then the findings in the instant case would, by necessity, change. Given that there is no such case

law, Judge Shirley's statement was accurate, Judge Shirley's determination that the information in the affidavit was not stale was accurate, and Defendant's objection is **OVERRULED**.

### AAA. <u>Objection 70</u>

Defendant next objects to Judge Shirley's determination that it was reasonable for Judge Guyton to believe that Defendant would keep his firearms in his residence. Defendant contends that this ruling relies on the unreliable information provided by Mr. Bailey, Jr. and upon the erroneous finding that the events of August 31, 2006, occurred at 185 Cattle Drive. Defendant further argues that this finding contradicts the affidavit, because the search warrant also authorizes the search of outbuildings and dilapidated vehicles, thus Judge Shirley failed to address the entirety of Defendant's nexus argument.

The Court has already ruled that the information provided by Mr. Bailey, Jr. was reliable and that the events of August 31, 2006, occurred at 185 Cattle Drive. The Court also notes that the information provided by Mr. Bailey, Jr. established that Defendant kept guns all over the premises. The affidavit also established that, based upon Agent Moore's training, experience, and information obtained from other members of law enforcement, individuals with illegal weapons often store them in "homes, outbuildings, and vehicles." Accordingly, the Court finds that there was a nexus between the places to be searched and the alleged criminal activity. Defendant's objection is **OVERRULED**.

### BBB. <u>Objection 71</u>

Defendant next objects to Judge Shirley's implication that Defendant was hiding weapons in a cooler. Defendant contends that there is no evidence that the weapons were hidden. The Court notes that the cooler in question is the blue food and beverage cooler that Mr. Bailey, Jr. indicated was used by Defendant to store weapons. The Court also notes that a food and beverage cooler is traditionally used to store and cool food and beverages. Given the traditional use of a food and beverage cooler, the Court does not find Judge Shirley's determination that Defendant was trying to hide firearms by placing them in a food and beverage cooler to be unreasonable. Defendant's objection is **OVERRULED**.

### CCC. <u>Objection 72</u>

Defendant next objects to Judge Shirley's determination that the parcels of land to be searched were described with sufficient particularity in the search warrant. Defendant again contends that the events of August 31, 2006, occurred on Parcel 023.03. The Court has already ruled that the events in question occurred at 185 Cattle Drive. Defendant's objection is **OVERRULED**.

### DDD. <u>Objections 73 and 74</u>

Defendant next objects to Judge Shirley's finding that it was established that the executing officers did travel to the proper premises despite any problem with the driving directions and also objects to Judge Shirley's reliance on *United States v. Gahagan*, 865 F.2d 1490 (6th Cir. 1988) in support of the conclusion that when an executing officer describes the premises to be searched to the magistrate, then the Fourth Amendment allows more

deference in regards to directions and description of the premises. Defendant contends that none of the executing officers testified, and thus this information was not in the record.

The Court notes that the government, in its response to Defendant's supplemental motion to suppress, filed an affidavit prepared by Agent Moore. [Doc. 77, Attachment 2]. That affidavit establishes that Agent Moore was both the affiant and executing officer relative to the search warrant issued by Judge Guyton in the instant case. [Id. at ¶ 3]. Accordingly, there was evidence of record showing that Agent Moore was both the affiant and the executing officer. Thus, *Gahagan* does apply and more deference is allowed with respect to the driving directions and description of the premises. In light of that deference, the Court finds that Judge Shirley did not err in his ultimate finding that the search warrant did not violate the peculiarity requirement of the Fourth Amendment. Defendant's objections are **OVERRULED**.

### EEE.  Objection 75

Defendant next objects to Judge Shirley's determination that the driving directions were such that an officer could, with reasonable effort, ascertain and identify the place intended. Defendant contends that the directions were erroneous and that no officer could have found the location to be searched following the directions, but would instead end up in a ditch.

The Court notes that the search warrant contains the correct street address of Defendant's residence, 185 Cattle Drive. Given that the correct address is identified, the Court finds that, with reasonable effort, executing officers could have located 185 Cattle

Drive, despite the error in the driving directions. The Court is confident that the average person could, once they realized that the directions led them to a ditch, backtrack and find the residence in question, especially given that Agent Moore was one of the executing officers, had prepared the instructions, and had been to 185 Cattle Drive in the past. Given that Agent Moore knew where 185 Cattle Drive was, given that Agent Moore was one of the executing officers, and given that the search warrant clearly identified the premises to be searched as 185 Cattle Drive, the Court is confident that there was little chance that the wrong house would be searched and even less chance that the officers, upon arriving at the ditch the directions as written would have led them to, would mistakenly search the ditch. Defendant's objection is **OVERRULED**.

### FFF.  Objection 76

Defendant next offers an additional basis for his objection to Judge Shirley's determination that an officer could locate the premises described in the search warrant with reasonable effort. Defendant contends that Judge Shirley failed to mention Defendant's argument as to the two prong test established by *Gahagan*. Under the two prong *Gahagan* test, a court must consider (1) whether the place to be searched is described with sufficient particularity as to enable to executing officer to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may be mistakenly searched. *Gahagan*, 865 F.2d at 1496-97.

Initially, the Court again points out that Agent Moore was both the affiant and the executing officer; thus, the search warrant is afforded some leeway under *Gahagan*.

Additionally, as the Court noted in ruling on the previous objection, there was little danger that the executing officers would mistakenly believe that the ditch the directions as written led them to was actually 185 Cattle Drive, especially not when they had Agent Moore's first hand experience to rely on, in addition to the photographs of 185 Cattle Drive included with the search warrant. The Court finds that the search warrant satisfied the particularity requirements of the Fourth Amendment. Defendant's objection is **OVERRULED**.

### GGG.   Objection 77a[16]

Defendant next objects to Judge Shirley's characterization of the testimony of Ms. Sandifer. Defendant contends that Judge Shirley erroneously stated that Ms. Sandifer testified that she would be able to find 185 Cattle Drive using the directions provided in the search warrant. Specifically, the testimony at issue is as follows:

> Q. Not in them directions. If you didn't know the area, say if you was coming from Federal Court and you was a bystander and picked them up, you might have a little trouble getting there wouldn't you?
>
> A. Well you might.

[Doc. 69 at pp. 59-60]. Shortly before that testimony, Ms. Sandifer testified to the following:

> Q. Okay. So looking at that even if you don't know where Emory Road is, do you think if you follow those you would be able to locate that, the premises there?
>
> A. Yes.

---

[16]The Court notes that Defendant numbered two objections as 77, thus the Court will identify the two as 77a and 77b.

[*Id*. at p. 59]. Based upon these two portions of testimony, it is clear that Ms. Sandifer felt that she could find 185 Cattle Drive but that a bystander picking up the directions might or might not be able to find the premises. Judge Shirley's statement that Ms. Sandifer testified that she could find 185 Cattle Drive was a true statement, though somewhat incomplete. However, any error created by that omission was harmless.

The Court accepts that there was a technical error in the driving directions and that there was some room for confusion. However, as noted above, the potential for confusion was remedied by Agent Moore's first hand knowledge of the area to be searched, by the fact that Agent Moore was both the affiant and the executing officer, and by the fact that the search warrant clearly indicated that the premises to be searched were located at 185 Cattle Drive, meaning there was little chance that the wrong area would be searched. The Court again finds that the search warrant satisfied the peculiarity requirements of the Fourth Amendment. Defendant's objection is **OVERRULED**.

### HHH. <u>Objection 77b</u>

Defendant next objects to Judge Shirley's omission of Defendant's argument that Cattle Drive intersects with Hopewell Road instead of Cedar Fork Road. As an aside, the Court notes that there are now hundreds of pages of evidence, facts, and argument at issue in the instant case. While the Court has attempted to be as thorough as possible, it would be impossible for the Court to include a verbatim recitation of every fact and argument Defendant has put forth. The mere fact that a judge does not mention every possible fact and argument raised by a party does not create automatic error, nor does it mean the judge is

unaware of those facts and arguments, especially not when the fact or argument does not alter the end result.

Again, as noted above, the Court recognizes that there was a technical error in the driving directions because the directions did not include Hopewell Road. However, it is clear from the testimony of Ms. Sandifer and Sergeant Chadwell that people familiar with the area considered the two roads to be identical. Any error in the search warrant caused by the confusion over the names of the roads and the technical error in the driving directions was overcome by Agent Moore's first hand knowledge of the area to be searched, by the fact that Agent Moore was both the affiant and the executing officer, and by the fact that the search warrant clearly indicated that the premises to be searched were located at 185 Cattle Drive, meaning there was little chance that the wrong area would be searched. Accordingly, Judge Shirley's failure to recite Defendant's argument concerning the intersection of Hopewell Road and Cattle Drive was harmless. Defendant's objection is **OVERRULED**.

### III.      Objection 78

Defendant next objects to Judge Shirley's finding that any failure on the part of the executing officers to comply with Rule 41 of the Federal Rules of Criminal Procedure was a technical error which did not prejudice Defendant. Defendant contends that the executing officers failed to include an inventory of the items seized, pointing to the fact that the "Inventory of Person or Property Taken Pursuant to the Warrant" portion of the return is blank. However, as Judge Shirley noted, one of the executing officers first prepared a hand-written inventory of the items seized, then transcribed that to word-processor format and

included the typed inventory list as an "Evidence Log." That same agent later filed an "Amended Evidence Log" when the agent discovered a typographical error in the "Evidence Log."

The Court can find no error in the executing officer's decision to attach a typewritten "Evidence Log" of items seized, especially in light of the number of items seized during the search. Nor can the Court find any error in the executing officer's decision to file an "Amended Evidence Log" when the officer discovered a typographical error. As far as Defendant's contention that Defendant does not know which list is the "appropriate inventory," given the progression of hand-written list, to typed "Evidence Log," to the corrected "Amended Evidence Log," logic would dictate that the Amended Evidence Log is the final listing of evidence provided by the government. Accordingly, the Court finds that the Amended Evidence Log is the controlling list of inventory for the purposes of the search warrant return. Additionally, the Court agrees with Judge Shirley's determination that, if there was an error on the part of the executing officers, it was merely a technical error and did not prejudice Defendant. Defendant's objection is **OVERRULED**.

### JJJ.    Objection 79

Defendant again objects to Judge Shirley's acceptance of the government's proffer of evidence in light of his failure to recite Defendant's proffer. As noted above, the Court has considered the Defendant's proffers and has ruled that the proffers do not alter the final determination in this case. Defendant's objection is **OVERRULED**.

**KKK.**    **Ultimate Ruling on Report and Recommendation**

Accordingly, Judge Shirley's Report and Recommendation [Doc. 94] is **ACCEPTED in part**, as modified by the rulings noted above. Defendant's objections [Doc. 108] are **SUSTAINED in part** and **OVERRULED in part**. Defendant's motion to suppress [Doc. 39], motion for *Franks* hearing [Doc. 40], supplemental motion to suppress and supplemental motion for *Franks* hearing [Doc. 66], and motion for reconsideration of denial of *Franks* hearing [Doc. 83] are **DENIED**.

**V.**    **Conclusion**

Accordingly, for all the reasons set forth above, Defendant's amended motion to dismiss [Docs. 98, 100] and amended motion for certification order [Docs. 87, 102] are **DENIED**. Judge Shirley's Report and Recommendation [Doc. 94] is **ACCEPTED in part**, as modified by the Court's rulings on Defendant's objections. Defendant's objections [Doc. 108] are **SUSTAINED in part** and **OVERRULED in part**. Defendant's motion to suppress [Doc. 39]; motion for *Franks* hearing [Doc. 40]; supplemental motion to suppress and supplemental motion for *Franks* hearing [Doc. 66]; and motion for reconsideration of denial of *Franks* hearing [Doc. 83] are **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan            
UNITED STATES DISTRICT JUDGE